STATE OF CONNECTICUT *v.* GUILLERMO AILLON

COTTER, C. J., BOGDANSKI, PETERS, PARSKEY and A. ARMENTANO, Js.

Argued June 11—decision released August 12, 1980

*Howard A. Jacobs,* special public defender, with whom was *John W. Watson,* for the appellant (defendant).

*Linda K. Lager,* assistant state's attorney, with whom was *Arnold Markle,* state's attorney, for the appellee (state).

COTTER, C. J. This appeal raises the issue whether the double jeopardy clause of the United States constitution prohibits a third trial of a defendant who successfully petitioned for a new trial after his first trial, which resulted in a conviction, and whose second trial terminated in a mistrial when the jury could not agree on a verdict.

The defendant was arrested and charged with three counts of murder alleged to have occurred in August, 1972. On September 1, 1973, after a trial to a jury, he was found guilty of murder on all three counts.

The accused after a conviction filed a petition for a new trial, which the trial court granted after a hearing on his petition. The state appealed from that order granting the accused a new trial and this court ordered a new evidentiary hearing which concerned a two-minute conversation between the presiding judge and a juror as to the continuance of deliberations after 10 p.m. *Aillon* v. *State,* 168 Conn. 541, 544, 363 A.2d 49 (1975). After the

second hearing on the propriety of this brief conversation at which the juror but not the judge testified, the trial court denied the new trial petition. The defendant appealed from that denial and this court reversed, concluding that the state failed to overcome the presumption of prejudice since the juror's testimony was not rebutted, and ordered a new trial. *Aillon* v. *State,* 173 Conn. 334, 377 A.2d 1087 (1977). The second full trial concluded on March 11, 1979, when the jury were discharged because they were unable to reach a verdict.

When a mistrial was declared after his second trial, the defendant moved for entry of a judgment of acquittal on three grounds: (1) double jeopardy; (2) Practice Book, 1978, §§ 889 and 898; and (3) judicial discretion. Upon the trial court's (*Quinn, J.*) denial of the defendant's motion, the defendant appealed to this court. The state moved to dismiss the appeal and we granted this motion except as to the defendant's double jeopardy claim on the ground that no final judgment had been entered in the cases appealed.[1] Thus, the sole matter now before us is the defendant's contention that the state cannot proceed with a third trial because such a trial would violate the federal constitutional guarantee against placing a criminal defendant twice in jeopardy for the same offense.[2]

The argument underlying the defendant's claim is essentially two-pronged. In seeming recognition

[1] Pursuant to Practice Book, 1978, § 3002, three separate cases involving three separate charges of murder, all captioned *State* v. *Aillon,* have been joined in this appeal.

[2] The double jeopardy provision of the fifth amendment has been made applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707. Although there is no specific prohibition of double jeopardy in the Connecticut constitution, we have

of the principle that when a mistrial is declared at the defendant's request or with his consent, the double jeopardy clause does not bar subsequent retrial; see, e.g., *United States* v. *Dinitz*, 424 U.S. 600, 608, 96 S. Ct. 1075, 47 L. Ed. 2d 267; *United States* v. *Jorn*, 400 U.S. 470, 484, 91 S. Ct. 547, 27 L. Ed. 2d 543; *United States* v. *Tateo*, 377 U.S. 463, 467, 84 S. Ct. 1587, 12 L. Ed. 2d 448; see also *United States* v. *Gordy*, 526 F.2d 631, 635 n.1 (5th Cir.); *United States* v. *Goldstein*, 479 F.2d 1061, 1066 (2d Cir.), cert. denied, 414 U.S. 873, 94 S. Ct. 151, 38 L. Ed. 2d 113; the defendant contends, as a threshold matter, that his actions at the time the trial court declared a mistrial are not a bar to a consideration of his double jeopardy claim. Secondly, the defendant seeks, by arguing for a characterization of his situation as presenting a case where two juries have failed to agree on a verdict, to have this court deem reprosecution barred by the double jeopardy clause. We cannot agree with either of the defendant's arguments, both of which would have the effect of circumventing settled analysis and doctrine under the double jeopardy clause. The novelty of the defendant's claim in this jurisdiction, however, necessitates our discussion of his two-pronged argument.

The double jeopardy clause of the fifth amendment serves to safeguard defendants in criminal proceedings against multiple punishments or repeated prosecutions for the same offense. *United States* v. *Dinitz*, supra, 606. This constitutional

---

in large part adopted the common-law rule against it "as necessary to the due process guaranteed by article first, § 9, of our constitution." *Kohlfuss* v. *Warden*, 149 Conn. 692, 695, 183 A.2d 626. In any event, since *Benton* v. *Maryland*, supra, a state's protection against double jeopardy can be no less extensive than that afforded by the federal constitution.

protection, however, does not guarantee a defendant that the government will be prepared, in all circumstances, to vindicate society's interest in law enforcement by a single proceeding for a given offense. *United States* v. *Jorn,* supra, 483–84.[3] To compel the government to do so "would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed." *Wade* v. *Hunter,* 336 U.S. 684, 688–89, 69 S. Ct. 834, 93 L. Ed. 974. Thus, a defendant's double jeopardy interests, which include his right to have his criminal trial completed by a particular tribunal, must in some instances be subordinated to society's interest "in fair trials designed to end in just judgments." Id., 689.

Where a mistrial has been declared, Mr. Justice Story's 1824 opinion in *United States* v. *Perez,* 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165, has provided the guiding principles for determining when trials should be discontinued. In that seminal case, the court held that the question of whether under the double jeopardy clause there can be a new trial after a mistrial depends on whether "there is manifest necessity for the [mistrial], or the ends of

---

[3] For example, it is well-established that the double jeopardy clause does not preclude reprosecution for the same offense where a defendant's conviction is set aside because of an error in the proceedings leading to the conviction. *United States* v. *Tateo,* 377 U.S. 463, 465, 84 S. Ct. 1587, 12 L. Ed. 2d 448. This rule has been followed in a variety of circumstances which have warranted an appellate court's reversal of a conviction, such as where: the original indictment was found defective; *United States* v. *Ball,* 163 U.S. 662, 16 S. Ct. 1192, 41 L. Ed. 300; confession of error occurred; *Stroud* v. *United States,* 251 U.S. 15, 40 S. Ct. 50, 64 L. Ed. 103; instructions to the jury were erroneous. *Forman* v. *United States,* 361 U.S. 416, 80 S. Ct. 481, 4 L. Ed. 2d 412.

public justice would otherwise be defeated." Id., 580. See, e.g., *United States* v. *Dinitz,* supra, 606–607; *Illinois* v. *Somerville,* 410 U.S. 458, 461, 93 S. Ct. 1066, 35 L. Ed. 2d 425; *Gori* v. *United States,* 367 U.S. 364, 368–69, 81 S. Ct. 1523, 6 L. Ed. 2d 901; *Simmons* v. *United States,* 142 U.S. 148, 153–54, 12 S. Ct. 171, 35 L. Ed. 968.

However, as *Perez* and its progeny, e.g., *United States* v. *Dinitz,* supra, 608, and *United States* v. *Jorn,* supra, 484, make clear, when a defendant consents to a declaration of a mistrial, no finding of manifest necessity for the declaration need be made. This is so because when a mistrial declaration is made without a defendant's consent, the defendant has been deprived of his "valued right to have his trial completed by a particular tribunal"; *Wade* v. *Hunter,* supra, 689; and the *Perez* doctrine of manifest necessity serves to ensure that this right is not foreclosed without the exercise of scrupulous judicial discretion.[4] *United States* v. *Jorn,* supra, 485.

When, however, as a result of a jury's inability to reach a verdict, a mistrial is declared at the defendant's request or with his consent, any barrier to reprosecution is removed. In these circumstances, the principle underlying the double jeopardy clause that the defendant retain primary

[4] Manifest necessity in this context has been construed as a "high degree" of necessity which is reached more easily in some kinds of cases than in others. *Arizona* v. *Washington,* 434 U.S. 497, 505–506, 98 S. Ct. 824, 54 L. Ed. 2d 717. A trial court's belief that the jury is unable to reach a verdict has long been considered the classic basis for a proper declaration of a mistrial. E.g., *Downum* v. *United States,* 372 U.S. 734, 735–36, 83 S. Ct. 1033, 10 L. Ed. 2d 100; *Wade* v. *Hunter,* 336 U.S. 684, 688–89, 69 S. Ct. 834, 93 L. Ed. 974; *Keerl* v. *Montana,* 213 U.S. 135, 138, 29 S. Ct. 469, 53 L. Ed. 734; *Logan* v. *United States,* 144 U.S. 263, 297–98, 12 S. Ct. 617, 36 L. Ed. 429. This is so because if a trial court "fails to dis-

control over the course of the proceedings; *United States* v. *Scott*, 437 U.S. 82, 93–94, 98 S. Ct. 2187, 57 L. Ed. 2d 65; has been followed. Thus, reprosecution where a defendant requests or consents to a mistrial declaration is barred only when prosecutorial or judicial overreaching is designed to provoke the defendant into asking for a mistrial, thereby avoiding an acquittal or affording the state another, perhaps more favorable, opportunity to convict, or the prosecutorial or judicial error was otherwise motivated by bad faith or attempted in order to harass or prejudice the defendant. See, e.g., *Lee* v. *United States,* 432 U.S. 23, 33–34, 97 S. Ct. 2141, 53 L. Ed. 2d 80; *United States* v. *Dinitz,* supra, 611; *Downum* v. *United States,* 372 U.S. 734, 736, 83 S. Ct. 1033, 10 L. Ed. 2d 100. This result is clearly dictated by logic since in the absence of intentional misconduct on the prosecutor's or judge's part and prejudice stemming from the misbehavior, a defendant's decision to ask for a mistrial or consent to one is voluntary and a strategic choice clearly not coerced by the defect in the trial. See *Drayton* v. *Hayes,* 589 F.2d 117, 122 (2d Cir.).[5]

charge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors." *Arizona* v. *Washington,* supra, 509. A trial court's evaluation of the necessity for a mistrial when it considers the jury deadlocked is accorded great deference by a reviewing court as long as the trial court exercises sound discretion so that the defendant's interest in having his trial reach a verdict by a particular tribunal is protected. Id., 510, 514; *United States* v. *Grasso,* 600 F.2d 342, 343–44 n.5 (2d Cir.).

[5] The defendant suggests that any acquiescence in the court's decision to discharge the jury cannot constitute a waiver of his double jeopardy claim, relying on *Johnson* v. *Zerbst,* 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461, which established the standard for a waiver of constitutional rights as a knowing, intelligent, and voluntary one. The Supreme Court, however, has clearly held that *even where* the defendant must determine whether or not to

Thus, since no allegation of prosecutorial or judicial bad faith has been made, it would seem that our inquiry should first be whether the defendant did consent to the court's mistrial declaration and, if and only if we determine that his actions did not constitute consent, should a determination be made as to whether the trial court's declaration of a mistrial was within its sound discretion. See, e.g., *Drayton* v. *Hayes*, supra, 121. Apparently in the recognition, however, that in this case consent[6] or

request or consent to a mistrial in response to judicial or prosecutorial error, traditional waiver concepts have little relevance. *United States* v. *Dinitz*, 424 U.S. 600, 609 n.11, 96 S. Ct. 1075, 47 L. Ed. 2d 267. In such circumstances, where the defendant faces a "Hobson's choice" between giving up his first jury and thus his chance to "end the dispute then and there with an acquittal"; *United States* v. *Jorn*, 400 U.S. 470, 484, 91 S. Ct. 547, 27 L. Ed. 2d 543; and continuing a trial tainted by error, the important consideration, which is a fundamental principle underlying the double jeopardy clause, is that the defendant retain primary control of the proceedings. *United States* v. *Scott*, 437 U.S. 82, 93–94, 98 S. Ct. 2187, 57 L. Ed. 2d 65; *United States* v. *Dinitz*, supra.

"In such circumstances, a defendant's mistrial request has objectives not unlike the interests served by the Double Jeopardy Clause— the avoidance of the anxiety, expense, and delay occasioned by multiple prosecutions . . . . [T]he protection against the burden of multiple prosecutions underlying the constitutional prohibition against double jeopardy may be served by a mistrial declaration and the concomitant relinquishment of the opportunity to obtain a verdict from the first jury. This Court has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right. See *Breed* v. *Jones*, 421 U.S. 519, 534; *United States* v. *Wilson*, 420 U.S. 332, 343–344, n. 11; *United States* v. *Jorn*, 400 U.S. 470, 484–485, n. 11 (plurality opinion); *United States* v. *Tateo*, 377 U.S., at 466." *United States* v. *Dinitz*, supra, 608, 609–10 n.11.

[6] In cases where the defendant did not request a mistrial, courts have looked to the totality of the circumstances surrounding the trial court's entry of a mistrial to determine whether a defendant consented to the entry. See, e.g., *United States* v. *Goldstein*, 479 F.2d 1061, 1067 (2d Cir.), cert. denied, 414 U.S. 873, 94 S. Ct. 151, 38 L. Ed. 2d 113. During deliberations on the afternoon of March 11, 1979, the foreman of the jury submitted a note stating:

manifest necessity[7] could readily be found, the

"Some of the members of the jury feel that it is necessary to continue discussing, but I believe we have examined all the evidence and testimony in this case, and still a unanimous decision has not been met." The trial judge urged the jury to continue deliberations until they reached a verdict or hopeless deadlock. At 10 p.m., the jury foreman submitted a note reading as follows: "Your Honor, we the jury, after exhausting all possible avenues in this case come to the point of being hopelessly deadlocked." After this note was submitted, the court asked the jury if they were deadlocked, and one juror submitted the following note: "I agree that the jury is hopelessly deadlocked on the verdict on the charge of murder. But I'm not satisfied that the proper procedure has been followed to the verdict of manslaughter in the first degree. I believe that it won't be, wouldn't take long for us to reach that verdict, but my conscience will allow me to let it go without a firm affirmation on the part of each and every one of us."

On the basis of this note, the state's attorney vigorously urged the court to allow the jury to continue their deliberations. The court referred back to the jury foreman's note which had indicated that the jury were completely deadlocked. At this point the following colloquy ensued:

"The Court: Mr. Jacobs, do you have anything to say?

Mr. Jacobs: No, your honor.

The Court: Bring the jury in.

Mr. Markle: Well, is he objecting to it or not then? Because if he has nothing to say I take it he's not objecting to the jury being allowed to do that.

Mr. Jacobs: The jury has made clear that they are hopelessly deadlocked. It does not seem to me that your Honor has any alternative in the matter.

Mr. Markle: Is he objecting to what I'm asking your Honor to do, because if he is not, I think there's no objection.

Mr. Jacobs: I'm objecting. I think the juror's indication is clear."

It is clear from this exchange that defense counsel did oppose the state's motion for continued jury deliberations, and thus, having opposed continued jury deliberations, the defendant cannot also be considered to have objected to a mistrial ending jury deliberations. In these circumstances, consent to the mistrial, if not express, must be implied. See *United States* v. *Goldman*, 439 F. Sup. 358, 362 (S.D. N.Y.) (where defense counsel sat silently while the prosecutor argued against mistrial and counsel then thanked the court for rejecting the prosecutor's argument, consent found to the mistrial).

[7] Appellate courts have found a number of factors to be helpful in determining whether a trial court has properly exercised its discretion in declaring a mistrial when the jury are deadlocked.

defendant does not contend that he did not consent to the trial court's declaration of a mistrial or that there was not manifest necessity for the court's declaration. Rather the defendant claims, in essence, that this is a case where two juries have failed to agree, in spite of the fact that the first jury brought in a conviction, and as such is one where this court should review not whether there was manifest necessity *for a mistrial declaration* but whether there is manifest necessity *for a retrial*. The defendant seeks to have us determine, under the double jeopardy clause, whether there is a need for a new trial by balancing the public's right to seek a final resolution of the charges against the

---

These factors include: "(1) a timely objection by defendant, (2) the jury's collective opinion that it cannot agree, (3) the length of the deliberations of the jury, (4) the length of the trial, (5) the complexity of the issues presented to the jury, (6) any proper communications which the judge has had with the jury, and (7) the effects of possible exhaustion and the impact which coercion of further deliberations might have on the verdict." *Arnold* v. *McCarthy,* 566 F.2d 1377, 1387 (9th Cir.). See also *United States* v. *Gordy,* 526 F.2d 631, 635–36 (5th Cir.); *United States ex rel. Russo* v. *Superior Court of New Jersey,* 483 F.2d 7, 16 (3d Cir.), cert. denied, 414 U.S. 1023, 94 S. Ct. 447, 38 L. Ed. 2d 315; *United States* v. *Goldstein,* 479 F.2d 1061, 1068 (2d Cir.); *United States* v. *Lansdown,* 460 F.2d 164, 168 (4th Cir.).

An application of these factors demonstrates that the trial court could not be considered to have abused its discretion in declaring a mistrial. The jury's own statement that they were hopelessly deadlocked is the most critical factor. *United States* v. *See,* 505 F.2d 845, 851 (9th Cir.), cert. denied, 420 U.S. 992, 95 S. Ct. 1428, 43 L. Ed. 2d 673. Moreover, upon questioning by the trial court the jury gave their collective opinion that they could not agree. See *United States* v. *Goldstein,* supra, 1068–69. The fact that one juror indicated some marginal uncertainty that the jury were hopelessly deadlocked as to a lesser included offense is insufficient to indicate a reasonable probability that an agreement would be reached without coercion. See *Arnold* v. *McCarthy,* supra, 1387.

There is no minimum amount of time which a jury need deliberate before a mistrial may be properly declared. After taking into consideration the complexity of the present case, involving as it

defendant against his interest in putting his risk at an end. The defendant does not deny that his interest, which is usually expressed as his right "to have his trial completed by the particular tribunal summoned to sit in judgment on him"; *Downum* v. *United States,* supra, 736; has been taken into account in a proper declaration of a mistrial. *United States* v. *Scott,* supra, 92. Rather he claims that where a third trial is at issue the defendant's interest protected by the double jeopardy clause involves the price exacted of the defendant in terms of "embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity"; *Green* v. *United States,* 355 U.S.

---

does a triple murder charge, we find it nonetheless clear that fifty-six hours of deliberation is not an unreasonably short time for a jury to reach a deadlock. See, e.g., *Keerl* v. *Montana,* 213 U.S. 135, 29 S. Ct. 469, 53 L. Ed. 734 (at least twenty-four hours); *Logan* v. *United States,* 144 U.S. 263, 298, 12 S. Ct. 617, 36 L. Ed. 429 (reprosecution not barred where the jury discharged after forty hours of deliberation and mistrial declared); *United States* v. *MacQueen,* 596 F.2d 76, 82 (2d Cir.) (most of three days); *Arnold* v. *McCarthy,* supra, 1386 (twelve hours).

A final and important reason to defer to the trial court's discretion is the risk of coercion. As the Supreme Court has stated: "[I]n this situation there are especially compelling reasons for allowing the trial judge to exercise broad discretion in deciding whether or not 'manifest necessity' justifies a discharge of the jury. On the one hand, if he discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.' But if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. If retrial of the defendant were barred whenever an appellate court views the 'necessity' for a mistrial differently from the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments." *Arizona* v. *Washington,* 434 U.S. 479, 509–10, 98 S. Ct. 824, 54 L. Ed. 2d 717.

184, 187, 78 S. Ct. 221, 2 L. Ed. 2d 199; and that this interest should be balanced against the state's interest in having one full opportunity to proceed to a verdict.

Even if we were to accept the defendant's view that the first trial should be considered the functional equivalent of a mistrial and that there have been two mistrials declared in his case, and even if we were to accept the factors the defendant would have us weigh against each other, this court finds persuasive the reasoning of the Second Circuit in *United States* v. *Castellanos,* 478 F.2d 749 (2d Cir.), a case which raised virtually the identical question with which we are confronted—whether a District Court may order the dismissal of an indictment on grounds of double jeopardy solely because two previous trials of a defendant have resulted in deadlocked juries? The *Castellanos* court stated: "Even assuming arguendo that we could step outside the *Perez* test and invoke the Double Jeopardy Clause simply because a certain number of mistrials had occurred, we would still conclude that reversal is mandated here. If the appropriate interest of the defendant to be weighed is the avoiding of the harassment and strain of multiple prosecutions, the situation where the first and second trials end in deadlocked juries is hardly distinguishable from the case where the third trial occurs after one or more appellate reversals. Yet, in *Keerl* v. *Montana,* 213 U.S. 135, 29 S. Ct. 469, 53 L. Ed. 734 (1909), the Supreme Court has held that the Double Jeopardy Clause is not violated by retrial after a jury deadlock and an appellate reversal of a conviction." Id., 753.

Each Circuit Court of Appeals which has addressed this precise issue after *Castellanos* has

held that the double jeopardy clause does not bar a third trial following two properly declared mistrials. See *United States* v. *Quijada,* 588 F.2d 1253, 1255 (9th Cir.) ; *United States* v. *Johnson,* 584 F.2d 148, 151, 153 (6th Cir.) ; *United States* v. *Gunter,* 546 F.2d 861, 866 (10th Cir.) ("the rationale of *Perez* suggests to us the propriety of a third trial where the prior juries were unable to agree upon a verdict"). See also *United States* v. *Berniker,* 439 F.2d 686 (9th Cir.), cert. denied, 404 U.S. 938, 92 S. Ct. 277, 30 L. Ed. 2d 250 (third trial not barred after two mistrials, the second because of a deadlocked jury) ; *United States* v. *Persico,* 425 F.2d 1375, 1377 (2d Cir.) (five trials permitted, two ended in mistrials due to deadlocked juries, two ended in convictions which were reversed on appeal, conviction in fifth trial not barred) ; *United States* v. *Corbitt,* 368 F. Sup. 881, 883–85 (E.D. Pa.) (conviction in third trial upheld, two prior mistrials due to jury deadlock) ; *People* v. *Baker,* 70 Misc. 2d 986, 335 N.Y.S.2d 487 (fourth trial not barred following reversal of conviction in first trial followed by two mistrials due to jury deadlock) ; *Orvis* v. *State,* 237 Ga. 6, 7-11, 226 S.E.2d 570 (conviction in third trial upheld, first two trials ended in mistrials due to deadlocked juries) ; *Iowa* v. *White,* 209 N.W.2d 15, 16–18 (Iowa) (two mistrials due to jury deadlock, third prosecution does not violate double jeopardy).[8]

---

[8] The defendant has not cited us to a case which supports his claims on the precise issue we have assumed arguendo to be before us of whether further prosecution following two previous mistrials can constitute double jeopardy. Instead, he seeks to rely on two cases which are clearly inapposite.

In *State* v. *Witt,* 572 S.W.2d 913 (Tenn.), where three trials within two years ended in hung juries, retrial was barred. The *Tennessee* court, however, was explicit in its refusal to rely on the double jeopardy clause and rested its decision on the trial court's

Furthermore, like the *Castellanos* court we have serious reservations that a certain number of mistrials would sanction placing in abeyance the rationale of *Perez* and its progeny. See *United States v. Castellanos,* supra, 752. The defendant's claim would compel us to enter a subjective quagmire by undertaking factual measurements of the strain of multiple prosecutions on a particular defendant in order to weigh that measurement against the public's interest in ensuring that justice is meted out to violators of society's laws. See, e.g., *Arizona v. Washington,* 434 U.S. 497, 503, 98 S. Ct. 824, 54 L. Ed. 2d 717.

A declaration of a mistrial, however, contemplates that the government will be permitted to prosecute anew notwithstanding an accused's double jeopardy claims; *United States* v. *Scott,* supra, 92; *Lee* v. *United States,* supra, 30; and *Perez* and its progeny make it clear that the *Perez* test itself embodies the appropriate balancing test to protect the defendant's interests by focusing on the manifest necessity for a mistrial where the defendant has not requested or consented to the mistrial. Where, moreover, as is true here, the defendant has exercised his right to control the course of the pro-

finding that "the probability of any future jury reaching a verdict of guilt or innocence [was] almost nonexistent." Id., 917. In *Preston* v. *Blackledge,* 332 F. Sup. 681 (E.D. N.C.), the court held that double jeopardy barred a fifth trial of the defendants, after four prior hung juries. The *Preston* court explicitly limited its decision to the facts of the case before it. We need merely echo the *Castellanos* court's appraisal of this case: "While we doubt the correctness of the case's reasoning, it is distinguishable from the one at hand on the basis of numbers, if nothing else." *United States* v. *Castellanos,* 478 F.2d 749, 752 n.2 (2d Cir.).

ceedings, he must now be prepared to face the practical consequences of his choice—the probability of reprosecution.

There is no error.

In this opinion the other judges concurred.