GUILLERMO AILLON *v.* JOHN R. MANSON,
COMMISSIONER OF CORRECTION, ET AL.
(12539)

GUILLERMO AILLON *v.* STATE OF CONNECTICUT ET AL.
(12564)

PETERS, C. J., SHEA, DANNEHY, CALLAHAN and COVELLO, Js.

Argued October 2—decision released December 30, 1986

*Jonathan E. Silbert,* special public defender, for the appellant (petitioner).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney for the appellees (respondents in each case.)

COVELLO, J. These appeals deal with the alleged ineffective assistance of counsel in failing to pursue a double jeopardy claim arising out of a prosecution for murder. We concur with the trial court's conclusion that the petitions do not set forth facts which would warrant the relief requested, and, therefore, find no error.

The petitioner, Guillermo Aillon, was charged with three counts of murder alleged to have occurred in August, 1972. In 1973, after the petitioner's first trial, the jury returned a verdict of guilty on all three counts. Several months after his conviction, the petitioner learned of an ex parte conversation between the trial judge and a juror during jury deliberations,[1] and moved for a new trial. A new trial was ordered and the state appealed. This court found that certain relevant evidence had been improperly excluded from the new trial

[1] At 10 p.m. on the final night of jury deliberations, a member of the jury asked to speak with the judge in regard to a personal matter. "A short time later, the trial judge, accompanied by the sheriff, appeared at the doorway of the jury room, and juror Read started to relate her problem to the judge. The judge, however, requested that she step out and he escorted her to the back of the jury box. The ensuing conversation lasted only a few minutes. Juror Read, who appeared nervous and upset, explained that she wanted to go home to Massachusetts but that some of the jurors wanted

hearing and remanded the case for further proceedings. *Aillon* v. *State,* 168 Conn. 541, 554, 363 A.2d 49 (1975) (*Aillon I*).

Following a second hearing on the petitioner's application for a new trial, the trial court denied his request, concluding that the conversation between the judge and the juror was harmless to the petitioner beyond a reasonable doubt. Upon appeal, this court found that the record contained no credible evidence as to the content of the ex parte conversation. This being the case, we found error in the court's conclusion and ordered a new trial. *State* v. *Aillon,* 173 Conn. 334, 339–40, 377 A.2d 1087 (1977) (*Aillon II*).

The petitioner's second trial ended in a mistrial when the jury was unable to return a verdict. Thereafter, the petitioner moved for a judgment of acquittal, claiming for the first time that his further prosecution was barred by the double jeopardy clause of the fifth amendment to the United States constitution.[2] The trial court

to adjourn for the evening although she and others wanted to continue deliberating. She then asked the judge, 'Can we stay?' The judge responded, 'Yes, you can stay.'

"The other jurors could not hear the conversation, although one juror testified that he thought he heard the trial judge say, 'You have to stay.' What juror Read said on her return to the jury room is disputed, but some jurors felt that she said the judge had told them to remain; others felt that the judge merely indicated that they could stay. At any rate, when the foreman asked what the trial judge had said, juror Read responded, in the presence and hearing of the other jurors, 'We can stay or we can go home but if we go home we come back tomorrow, the next day and the next day.' The jury thereupon continued deliberating. Six hours later, at 4:25 a.m. on Saturday, September 1, 1973, the jury reached their verdict of guilty on each of the three counts of murder.

"Although the plaintiff and his counsel were present in the courthouse at all times on the evening in question, the trial judge did not inform them of either the note or the ensuing conversation with juror Read." *Aillon* v. *State,* 168 Conn. 541, 544–45, 363 A.2d 49 (1975).

[2] The fifth amendment to the United States constitution states, in part, that no person shall "be subject for the same offense to be twice put in

rejected his claim of double jeopardy and denied the motion. The petitioner did not specifically raise in that proceeding the claim of judicial bad faith and overreaching that he now advances, but claimed, for a host of other reasons, that double jeopardy should operate as a bar to further prosecution.

We rejected his claims and held that where a mistrial is declared at the defendant's request or with his consent,[3] or as a result of a jury's inability to return a verdict, any bar to reprosecution is removed. *State v. Aillon,* 182 Conn. 124, 129, 438 A.2d 30 (1980), cert. denied, 449 U.S. 1090, 101 S. Ct. 883, 66 L. Ed. 2d 817 (1981) (*Aillon III*). "In these circumstances, the principle underlying the double jeopardy clause [i.e.,] that the defendant retain primary control over the course of the proceedings; *United States v. Scott,* 437 U.S. 82, 93–94, 98 S. Ct. 2187, 57 L. Ed. 2d 65 [reh. denied, 439 U.S. 883, 99 S. Ct. 226, 58 L. Ed. 2d 197 (1978)]; has been followed." *Aillon III,* supra, 129–30. Because there was "no allegation of prosecutorial or judicial bad faith," we concluded that the petitioner's consent to the mistrial barred the application of any double jeopardy precepts. Id., 131, 137–38.

More than a year after this court rejected the petitioner's first double jeopardy claim, he renewed his

jeopardy of life or limb." The double jeopardy clause of the fifth amendment is applicable to the states through the due process clause of the fourteenth amendment. See *Benton v. Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

Although there is no specific prohibition of double jeopardy in the Connecticut constitution, we have in large part adopted the common law rule against it "as necessary to the due process guaranteed by article first, § 9, of our constitution." *Kohlfuss v. Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962).

[3] We assumed, without deciding, that the first trial was the functional equivalent of a mistrial. *State v. Aillon,* 182 Conn. 124, 135, 438 A.2d 30 (1980). For the purpose of this decision, we again assume, arguendo, that the petitioner's first trial was the functional equivalent of a mistrial, predicated upon his motion for a new trial.

claim and moved to dismiss the indictments against him. This claim was again based on the ex parte conversation between the judge and juror at his first trial. The petitioner then argued for the first time that judicial overreaching had made a second trial necessary and therefore impaired his right "to have his guilt or innocence determined by the tribunal summoned to sit in judgment on him," *State* v. *Aillon*, 189 Conn. 416, 421–22, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983) (*Aillon IV*). He also moved for a further evidentiary hearing to establish bad faith on the part of the first trial judge as a motive for the ex parte conversation.

The trial court denied the petitioner's motions, holding that the proper time to have raised his double jeopardy claim based on the events which occurred during the first trial was prior to the commencement of his second trial. The court then concluded that Aillon's failure to proceed in a timely fashion constituted a waiver of his right to pursue the double jeopardy claim. Upon appeal, without reaching the issue of a possible waiver, we found that the "slight shift in evidentiary basis and substantive legal theory of law does not constitute a new claim." Id., 426. Since the double jeopardy matter had been fully heard in *Aillon III,* supra, we concluded that the doctrine of res adjudicata precluded relitigation of the petitioner's double jeopardy claim. *Aillon IV,* supra, 423–29.

On November 10, 1983, after our most recent decision in *Aillon IV,* supra, the petitioner filed an application for a writ of habeas corpus, claiming that he had received ineffective assistance of counsel. The petitioner alleged that his trial counsel had failed to claim "that actions of the Court . . . during his first trial in 1973 constituted judicial misconduct foreclosing 'the petitioner's right to have his guilt or innocence determined by the particular tribunal summoned to sit in

judgment on him.' " The respondent state filed a motion to quash,[4] alleging that the petition failed to state a cause of action upon which relief could be granted. The lower court concluded that "[t]o successfully raise a claim of Double Jeopardy due to judicial misconduct, petitioner must allege that such judicial misconduct was *intended* to provoke the defendant into moving for a mistrial." (Emphasis added.) Since the petitioner had made no such allegation, the court granted the motion to quash and dismissed the petition. The petitioner then appealed.

"Our cases demonstrate that '[t]o succeed in his claim of ineffective assistance of counsel, the petitioner must show that his attorney's performance was not '" 'reasonably competent or within the range of competency displayed by lawyers with ordinary training and skill in criminal law' " . . . and further, that this " 'lack of competency contributed to the conviction.' " ' " (Citations omitted.) *Levine* v. *Manson,* 195 Conn. 636, 639, 490 A.2d 82 (1985). Within the context of the present proceeding, the petitioner must have alleged that effective counsel would have raised the double jeopardy claim and that the claim, *as stated,* was such that subsequent prosecution would have been barred by the doctrine of double jeopardy.

"The double jeopardy clause of the fifth amendment serves to safeguard defendants in criminal proceedings against multiple punishments or repeated prosecutions for the same offense. *United States* v. *Dinitz,* [424 U.S. 600, 606, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976)]. This constitutional protection, however, does not guarantee a defendant that the government will be prepared, in all circumstances, to vindicate society's interest in law enforcement by a single proceeding for a given

[4] Practice Book § 532 provides in relevant part that "[t]he sufficiency of the petition on which the writ was granted and the propriety of the issuance of the writ may be tested, before a return is filed, by a motion to quash. On such a motion the allegations of the petition are deemed admitted. . . ."

offense. *United States* v. *Jorn,* [400 U.S. 470, 483–84, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971)]." *Aillon III,* supra, 127–28. Thus, when a mistrial is declared at the defendant's request or with his consent, the double jeopardy clause does not ordinarily bar subsequent retrial. *United States* v. *Dinitz,* supra, 608; *United States* v. *Jorn,* supra, 484. "When the defendant requests a mistrial, he is deemed to have deliberately elected 'to forego his valued right to have his guilt or innocence determined before the first trier of fact.' *United States* v. *Scott,* [supra, 93]." *United States* v. *Rivera,* 802 F.2d 593, 597 (2d Cir. 1986).[5]

The one narrow exception which allows a defendant to invoke the double jeopardy bar after his request for, or consent to, a mistrial is "when prosecutorial or judicial overreaching is designed to provoke the defendant into asking for a mistrial, thereby avoiding an acquittal or affording the state another, perhaps more favorable, opportunity to convict, or the prosecutorial or judicial error was otherwise motivated by bad faith or attempted in order to harass or prejudice the defendant. . . . This result is clearly dictated by logic since in the absence of *intentional* misconduct on the prosecutor's or judge's part and prejudice stemming from the misbehavior, a defendant's decision to ask for a mistrial or consent to one is voluntary and a strategic choice clearly not coerced by the defect in the trial." (Citations omitted; emphasis added.) *Aillon III,* supra, 130.

The mere allegation of judicial or prosecutorial overreaching, harassment, bad faith or other misconduct is not enough, however, for "[p]rosecutorial conduct that might be viewed as harassment or overreaching,

---

[5] Absent the defendant's consent, there is a longstanding rule that the double jeopardy clause bars retrial after a mistrial unless there was a "manifest necessity" for the mistrial declaration, the classic example of which is a hung jury. See *United States* v. *Perez,* 22 U.S. (9 Wheat.) 579, 580 (1824).

even if sufficient to justify mistrial . . . does not bar retrial absent *intent* on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. . . . Only where the governmental conduct in question is *intended* to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy . . . ." (Emphasis added.) *Oregon v. Kennedy,* 456 U.S. 667, 675–76, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982).

The petitioner argues that *Oregon v. Kennedy* is limited to cases involving prosecutorial misconduct. It is clear that, although the facts of *Kennedy* were limited to prosecutorial improprieties, the United States Supreme Court intended the standard to apply to judicial, as well as prosecutorial, misconduct. See *United States v. Rivera,* supra, 598–99. Prior decisions had dealt with both judicial and prosecutorial conduct in the same context; see *United States v. Dinitz,* supra; *United States v. Jorn,* supra; *United States v. Tateo,* 377 U.S. 463, 467, 84 S. Ct. 1587, 12 L. Ed. 2d 448 (1964); and the *Kennedy* Court decided to review the applicable standard because the standard previously enunciated seemingly broadened the test "from one of intent to provoke a motion for mistrial to a more generalized standard of 'bad faith conduct' or 'harassment' on the part of the *judge* or prosecutor." (Emphasis omitted/added.) *Oregon v. Kennedy,* supra, 674. Although, because the facts of the case were limited to prosecutorial impropriety, the court only addressed misconduct in that context, nowhere in its decision did the court attempt to differentiate prosecutorial misconduct from judicial misconduct. As Justice Stevens stated in a concurring opinion, "[t]he exception also encompasses comparable judicial misconduct. Because we are confronted with prosecutorial error, this opinion will only address that context." Id., 683 n.13 (Stevens, J., concurring).

It is evident from the foregoing that even had Aillon's counsel claimed that the actions of the court during the first trial in 1973 "constituted judicial misconduct foreclosing 'the petitioner's right to have his guilt or innocence determined by the particular tribunal summoned to sit in judgment on him,' " the double jeopardy clause would still not have barred subsequent reprosecution. The petition did not allege nor did counsel claim that the misconduct was carried out with the intent to provoke a mistrial. Thus, the lower court did not err in dismissing Aillon's first petition.

On August 3, 1984, the petitioner filed another application for a writ of habeas corpus. Again he alleged that he had received ineffective assistance of counsel because his attorney had failed to raise a valid claim of double jeopardy.[6] With respect to the trial judge's intent, Aillon claimed that the judge's "participation in this conversation was intentional." He further alleged that the judge had concealed the conversation

---

[6] In this petition, Aillon alleged that he received ineffective assistance of counsel in that his counsel failed to raise, in a timely fashion, a valid double jeopardy claim, to wit:

"12. A third trial in the cases of *State of Connecticut* v. *Guillermo Aillon* violates the double jeopardy and due process clauses of the Fifth and Fourteenth Amendments, respectively, to the United States Constitution, and Article I, Section 8 of the Connecticut Constitution by virtue of the following facts:

"a. The improper conversation described in subparagraph 7, supra, was undertaken by Judge Cohen under circumstances such that he knew or should have known of its impropriety.

"b. Judge Cohen's participation in this conversation was intentional.

"c. Judge Cohen knew, or should have known, that his conversation with the juror would have provoked a mistrial, had the existence of the conversation been discovered by the defendant and/or his counsel prior to the rendering of a verdict.

"d. Judge Cohen improperly concealed the existence of the conversation from the defendant and his counsel, under circumstances such that he knew, or should have known, that concealment was improper.

"e. Judge Cohen knew, or should have known, that the fact of his concealment of the conversation would have provoked a mistrial, had such con-

knowing that it was improper, and that a mistrial would be provoked if the conversation were discovered. A motion to quash was again granted for the reason that the petition failed to state a cause of action. The petitioner also appealed this second ruling.

An allegation that judicial misconduct was the product of an intentional act is simply not sufficient to lay the foundation for a claim that further prosecution is barred by the tenets of double jeopardy. To be successful, it must be alleged that the judge had acted with the intent "to provoke the defendant into moving for a mistrial." *Oregon* v. *Kennedy,* supra, 679.[7] Nothing in the record of this case would support such an allegation.

Therefore, we find no error.

In this opinion the other justices concurred.

cealment been discovered by the defendant and/or his counsel prior to the rendering of a verdict.

"f. Judge Cohen's misconduct foreclosed the Petitioner's right to have his guilt·or innocence determined by the particular tribunal summoned to judge his case."
Petitioner's Petition for Writ of Habeas Corpus, August 3, 1984.

[7] The petitioner also argues that even if he failed to state a claim upon which relief could be granted in light of *Oregon* v. *Kennedy,* 456 U.S. 667, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982), he did state a claim upon which relief could be granted in light of the law as it existed at the time of the alleged misconduct. We find this argument without merit.

As the Court of Appeals for the District of Columbia succinctly stated, "we may fairly apply *Kennedy* . . . to the instant case. It is settled that where a decision merely affirms prevailing law and applies it to the particular case before the court, the decision is applicable to all pending cases. *United States* v. *Johnson,* [457 U.S. 537, 549–50, 102 S. Ct. 2579, 73 L. Ed. 2d 202 (1982)]. . . . [W]e are not persuaded that because the court put to rest some arguably inconsistent language from earlier opinions, we may not allow *Kennedy* this limited retroactive effect." (Emphasis omitted.) *Matter of V.G.E.,* 452 A.2d 1195, 1197 (D.C. Cir. 1982); cf. *Robinson* v. *Neil,* 409 U.S. 505, 93 S. Ct. 876, 35 L. Ed. 2d 29, reh. denied, 410 U.S. 959, 93 S. Ct. 1423, 35 L. Ed. 2d 694 (1973); *State* v. *Ryerson,* 201 Conn. 333, 339, 514 A.2d 337 (1986).