STATE OF CONNECTICUT *v.* HAROLD
TRENT BUTLER
(SC 16610)

Sullivan, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued September 24—officially released December 17, 2002

*Avery S. Chapman*, for the appellant (defendant).

*Robert J. Scheinblum*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *Michael Pepper*, senior assistant state's attorney, and *Susan C. Marks*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, C. J. The sole issue in this interlocutory appeal is whether the trial court properly denied the defendant's motion to dismiss, on double jeopardy grounds, the charges pending against him. We affirm the trial court's decision.

The defendant was convicted of murder as an accessory in violation of General Statutes §§ 53a-54a (a)[1] and

---

[1] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation

53a-8[2] and conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48 (a).[3] The Appellate Court overturned his conviction in *State* v. *Butler*, 55 Conn. App. 502, 739 A.2d 732 (1999), and remanded the case for a new trial. Id., 519. Following our grant of certification; *State* v. *Butler*, 252 Conn. 941, 747 A.2d 520 (2000); we affirmed that decision in a per curiam opinion. *State* v. *Butler*, 255 Conn. 828, 769 A.2d 697 (2001).

In its opinion overturning the defendant's conviction, the Appellate Court set forth the following relevant facts: "On March 21, 1994, Officer William Coppola of the New Haven police department was dispatched to 305 Exchange Street, where he discovered the body of the victim, Amenophis Morris. The victim had sustained fatal gunshot wounds. At the defendant's trial, Jeffrey Dolphin testified for the state concerning the circumstances surrounding the murder. Dolphin testified that on March 21, 1994, Terrance Stevenson forced him at gunpoint into a motor vehicle driven by James Baker.

under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] General Statutes § 53a-8 provides: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.

"(b) A person who sells, delivers or provides any firearm, as defined in subdivision (19) of section 53a-3, to another person to engage in conduct which constitutes an offense knowing or under circumstances in which he should know that such other person intends to use such firearm in such conduct shall be criminally liable for such conduct and shall be prosecuted and punished as if he were the principal offender."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

Jermaine Harris and the defendant were passengers in Baker's vehicle.

"Dolphin testified that when Baker was driving on Exchange Street, one of the vehicle's occupants noticed the victim standing on the front porch of 305 Exchange Street. Baker then parked the vehicle farther down the block. Dolphin testified that Stevenson and Harris exited the vehicle and walked toward the victim. Baker and the defendant then exited the vehicle and waited near the front of the car. Dolphin testified that shortly after he heard six or seven gunshots, Harris, Baker, Stevenson and the defendant returned to the vehicle, and either Harris or Stevenson stated, 'I got the mother . . . I got the asshole.'

"Dolphin did not immediately contact the police. On April 22, 1994, the police arrested Dolphin on unrelated narcotics charges, and he provided information about the murder. The police subsequently arrested Harris, Stevenson, Baker and the defendant, and charged them with murder as accessories and conspiracy to commit murder. Dolphin testified at the trials of Baker and Stevenson, which preceded the defendant's trial, and Baker and Stevenson were convicted on both charges. In the present case, the jury found the defendant guilty of murder as an accessory and conspiring to commit murder. He received a total effective sentence of forty-five years imprisonment. . . .

"The defendant [appealed, claiming] that the trial court improperly denied his motions for a mistrial, which he based on the existence of egregious prosecutorial misconduct that deprived him of his due process right to a fair trial in violation of the federal constitution. . . . At trial, the prosecutor claimed that the defendant aided and abetted Baker, Harris and Stevenson in murdering the victim, and conspired with them to commit the murder. In its appellate brief, the state concedes

that the jury was informed that the trials of Baker and Stevenson had preceded the defendant's trial and that Dolphin had testified in those trials.

"In closing argument to the jury, defense counsel stated: '[O]ne of the most difficult parts about [this case] has been tracking all of the inconsistencies of the state's witness, Mr. Dolphin. The witness for the state, Jeffrey Dolphin, has lied to you, ladies and gentlemen. He has lied to the police, he has lied to other juries, he has lied to you as members of this jury. He has lied to an officer of the court, attorney [Leo] Ahern. But don't take my word for it, just look at his testimony . . . .' The prosecutor neither objected to this statement when it was made, nor did he object at the conclusion of defense counsel's closing argument, nor did he request a curative instruction or some other remedy.

"Instead, in rebuttal, the prosecutor stated: '[T]he other thing [defense counsel] said to you—I do not want you to be left with the wrong impression—he said that [Dolphin] has lied to other juries. Well, let me tell you, ladies and gentlemen, I wish I could tell you what other juries decided, but I am not allowed to.' . . . At the conclusion of the prosecutor's rebuttal, after the court had excused the jury, defense counsel orally moved for a mistrial. The court stated: 'That is absolutely some of the most impermissible argument I have heard. . . . I am so upset about this, and I am going to think about it during the lunch hour . . . .' After the lunch recess, defense counsel filed a written motion for dismissal, mistrial, surrebuttal time or a corrective instruction. The prosecutor claimed that his statement was invited by defense counsel and that he was merely attempting to counteract defense counsel's assertion that Dolphin had lied to other juries. Defense counsel responded that his statement merely referred to the inconsistencies in Dolphin's testimony in this trial and the two previous trials. The court agreed with defense

counsel. Despite stating that the prosecutor's comment was prejudicial, improper and unprofessional, the court denied the defendant's motions for dismissal and a mistrial, but granted the request for a curative instruction." *State* v. *Butler*, supra, 55 Conn. App. 503–506. The Appellate Court ruled that a mistrial should have been granted, reversed the judgment of guilty and remanded the case for a new trial. Id., 503, 519. We affirmed the Appellate Court's decision. *State* v. *Butler*, supra, 255 Conn. 830.

Thereafter, pursuant to the fourteenth amendment to the United States constitution, article first, §§ 7 through 9, of the constitution of Connecticut, and Practice Book § 41-8 (6), the defendant moved to dismiss the charges, maintaining that a retrial would deprive him of his right not to stand trial twice for the same offense. The trial court concluded that, in the present case, a retrial would be permissible unless the prosecutor's misconduct in the first trial was done with the intent to provoke the defendant into moving for a mistrial. The trial court found that there had been no such intent, finding instead that "[c]learly . . . the circumstances of this case suggest that the comments of the state, though improper and out of proportion to its goal, were, at least, precipitated by and intended to respond to the objectionable comments of defense counsel. The state's comments do not appear to be independently devised or designed to provoke a mistrial." Accordingly, the trial court denied the motion to dismiss. Thereafter, the defendant filed an interlocutory appeal with the Appellate Court, which we transferred to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We affirm the decision of the trial court.[4]

---

[4] Alleged violations of the right against double jeopardy fall within the "small class of cases that [meet] the test of being effectively unreviewable on appeal from a final judgment and therefore, [are] subject to interlocutory review." *State* v. *Tate*, 256 Conn. 262, 275, 773 A.2d 308 (2001).

The defendant challenges both the legal conclusion and the factual finding of the trial court with regard to his double jeopardy claim. We find neither argument persuasive.[5] We consider the defendant's legal claim first.

The defendant claims that the trial court applied an improper legal standard in determining whether double jeopardy barred his retrial. Specifically, although the defendant acknowledges that the double jeopardy clause does not ordinarily bar retrial where, as in the present case, a defendant has moved for a mistrial in the first trial, he claims that there are two exceptions to this rule under which double jeopardy principles *will* bar retrial notwithstanding a defendant's motion for a mistrial. He claims that retrial is barred when either (1) prosecutorial misconduct in the first trial was designed to provoke a defendant into moving for a mistrial or (2) *the misconduct was motivated by an intent to harass or prejudice a defendant,* and that the trial court improperly concluded that he could prevail on his double jeopardy claim only if he could demon-

[5] We note that our conclusion that the defendant cannot prevail on the merits of his claim obviates the need for us to consider the state's request that we overrule *State* v. *Colton,* 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). In *Colton,* we concluded that a defendant may prevail on a double jeopardy claim even when the first trial resulted in a verdict in cases in which there had been clandestine prosecutorial misconduct designed to avoid an acquittal that the prosecutor believed was likely to occur in the absence of his misconduct. Id., 698–700. The state argues that, in this case, because the defendant's first trial ended in a verdict, rather than a mistrial, under *Oregon* v. *Kennedy,* 456 U.S. 667, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982), the defendant cannot prevail on his double jeopardy claim. The state concedes, however, that our decision in *Colton* holds that the fact that the defendant's first trial ended in a verdict is not a bar to raising a successful double jeopardy claim. The state argues that the defendant should not prevail on his double jeopardy because *Colton* was an unwarranted extension of *Oregon* v. *Kennedy,* supra, 676, which we should overrule. Because the defendant cannot prevail on the merits of his claim in any event, we decline to revisit *Colton* under these circumstances.

strate that the first exception applied. We conclude that the trial court properly recognized that the defendant could not prevail on his double jeopardy claim merely by demonstrating that prosecutorial misconduct in the first trial was motivated by an intent to harass or prejudice the defendant.

We begin by noting that, because this claim presents an issue of law, our review is plenary. See, e.g., *State* v. *Tuchman*, 242 Conn. 345, 351, 699 A.2d 952 (1997), cert. dismissed, 522 U.S. 1101, 118 S. Ct. 907, 139 L. Ed. 2d 922 (1998). The basic contours of double jeopardy jurisprudence are well established. "The double jeopardy clause of the fifth amendment to the United States constitution provides: '[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . .' This constitutional provision is applicable to the states through the due process clause of the fourteenth amendment. . . . The Connecticut constitution provides coextensive protection, with the federal constitution, against double jeopardy."[6] (Citation omitted.) *State* v. *Ferguson*, 260 Conn. 339, 360, 796 A.2d 1118 (2002).

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. . . . As a part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a valued right to have his trial completed by a particular tribunal." (Citation omitted; internal quotation marks omitted.) *Oregon* v. *Kennedy*, 456 U.S. 667, 671–72, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982). Ordinarily, the prohibition against double jeopardy does not apply where a defen-

---

[6] We note that, "[b]ecause the defendant has not presented a separate analysis of his double jeopardy claim under the state constitution, we confine our analysis to the application of the federal constitution's double jeopardy bar." *State* v. *Colton*, 234 Conn. 683, 686 n.6, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996).

dant has requested that a mistrial be declared. Id., 672. "[United States Supreme Court] cases, however, have indicated that even where the defendant moves for a mistrial, there is a narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial." Id., 673.

In *Oregon* v. *Kennedy*, supra, 456 U.S. 676, the United States Supreme Court stated that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." In so holding, the court acknowledged that its language in cases such as *United States* v. *Dinitz*, 424 U.S. 600, 611, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976), appeared "to broaden the test from one of *intent* to provoke a motion for a mistrial to a more generalized standard of 'bad faith conduct' or 'harassment' on the part of the judge or prosecutor." (Emphasis in original.) *Oregon* v. *Kennedy*, supra, 674. In *Oregon* v. *Kennedy*, supra, 675–76, however, the court explicitly repudiated the "harassment" standard that the defendant in the present case advocates as the law ("[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause"). Instead, the court concluded that "the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." Id., 679.

The defendant cites *State* v. *Aillon*, 182 Conn. 124, 130, 438 A.2d 30 (1980), cert. denied, 449 U.S. 1090, 101 S. Ct. 883, 66 L. Ed. 2d 817 (1981), for the proposition that this court has read *Oregon* v. *Kennedy*, supra, 456

U.S. 667, as permitting the defendant to invoke the double jeopardy bar "when prosecutorial or judicial overreaching is designed to provoke the defendant into asking for a mistrial, thereby avoiding an acquittal or affording the state another, perhaps more favorable, opportunity to convict, *or the prosecutorial or judicial error was otherwise motivated by bad faith or attempted in order to harass or prejudice the defendant.*" (Emphasis added.) *State* v. *Aillon*, supra, 124, however, was decided *prior* to *Oregon* v. *Kennedy*, supra, 667, and relied upon United States Supreme Court cases that also predated that case. See *State* v. *Aillon*, supra, 130, citing *Lee* v. *United States*, 432 U.S. 23, 33–34, 97 S. Ct. 2141, 53 L. Ed. 2d 80 (1977); *United States* v. *Dinitz*, supra, 424 U.S. 611; *Downum* v. *United States*, 372 U.S. 734, 736, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963). To the extent that these cases invoked the broader "harassment" standard, however, they were overruled by *Oregon* v. *Kennedy*, supra, 667. Thus, insofar as it suggests a broader exception to the double jeopardy waiver than that provided by *Oregon* v. *Kennedy*, supra, 676, 679, *State* v. *Aillon*, supra, 130, is no longer good law.

We implicitly acknowledged this in a subsequent case arising from the same incident as *State* v. *Aillon*, supra, 182 Conn. 124. In *Aillon* v. *Manson*, 201 Conn. 675, 519 A.2d 35 (1986), we considered whether the failure by defense counsel in the petitioner's criminal trial to move for dismissal on double jeopardy grounds gave rise to a claim of ineffective assistance of counsel. In ruling that the double jeopardy claim of the defendant in *State* v. *Aillon*, supra, 124, was meritless, we quoted the language from that case upon which the defendant in the present case relies. *Aillon* v. *Manson*, supra, 681. In *Aillon* v. *Manson*, supra, 681–82, however, we continued, quoting *Oregon* v. *Kennedy*, supra, 456 U.S. 675–76: "The mere allegation of judicial or prosecutorial over-

reaching, harassment, bad faith or other misconduct is not enough, however, for '[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify mistrial . . . does not bar retrial absent *intent* on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. . . . Only where the governmental conduct in question is *intended* to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy . . . .' " (Emphasis in original.)

The defendant also challenges the trial court's finding that the prosecutor did not intend to provoke a mistrial.[7] Whether the prosecutor so intended is a question of fact. See *Oregon* v. *Kennedy,* supra, 456 U.S. 675 ("a standard that examines the intent of the prosecutor . . . merely calls for the court to make a finding of fact"). "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Webster Trust* v. *Roly,* 261 Conn. 278, 284 n.7, 802 A.2d 795 (2002).

The defendant does not assert that there was no evidence in the record to support the trial court's finding, but argues nonetheless that that finding was improper. In overturning his earlier conviction, the Appellate Court stated that "[t]he prosecutor's misconduct constituted a wilful violation of an order of the

---

[7] In light of our disposition of the defendant's claim regarding the standard by which the prosecutor's misconduct should have been assessed, we need not consider his claim that the misconduct was motivated by bad faith or attempted in order to harass the defendant.

trial court and a deliberate attempt to improperly influence the jury." *State* v. *Butler*, supra, 55 Conn. App. 513. The defendant maintains that the trial court's finding is inconsistent with this statement. We disagree. Whether the conduct by the prosecutor was intentional is not the relevant inquiry. Rather, the question to be asked is whether the prosecutor intended to provoke a mistrial. As the Seventh Circuit has explained: "The requirement of intent is critical, and easily misunderstood. The fact that the government blunders at trial and the blunder precipitates a successful motion for a mistrial does not bar a retrial. . . . Yet the blunder will almost always be intentional—the product of a deliberate action, not of a mere slip of the tongue. A prosecutor who in closing argument comments improperly on the defendant's failure to have taken the stand, thus precipitating a mistrial or a reversal on appeal, is no doubt speaking deliberately, though his judgment may be fogged by the heat of combat. But unless he is trying to abort the trial, his misconduct will not bar a retrial. It doesn't even matter that he knows he is acting improperly, provided that his aim is to get a conviction. . . . The only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means." (Citations omitted.) *United States* v. *Oseni*, 996 F.2d 186, 188 (7th Cir. 1993). The Appellate Court's statement is therefore not inconsistent with the trial court's finding.

The defendant also claims that the remarks made by defense counsel at trial, in which he referred to a witness as having "lied" in other trials, were proper. This claim, even if true, does not undermine the trial court's finding that the prosecutor was motivated by a desire to respond to those comments and not by a desire to provoke a mistrial. The prosecutor could have been motivated by a desire to respond to these remarks even

if the remarks to which he responded were not improper.

The defendant further maintains that the trial court was "wrong" to focus on the remarks of defense counsel in determining the intent of the prosecutor, and that the trial court "ignored the other indicia of intent . . . ." As the finder of fact, however, the trial court was entitled to weigh the evidence as it saw fit.[8] See *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission,* 212 Conn. 727, 738 n.10, 563 A.2d 1347 (1989) ("the acceptance or rejection of testimony and the weight to be given evidence is a matter for the factfinder").

In summary, we conclude that the trial court applied the correct legal standard in assessing the prosecutor's misconduct and that its factual finding must be upheld. The trial court's denial of the defendant's double jeopardy claim was therefore proper.

The decision of the trial court is affirmed.

In this opinion the other justices concurred.

---

[8] Similarly, the defendant's claim that it is "just as logical" to conclude that the prosecutor intended to provoke a defense motion for a mistrial does not provide a reason for concluding that a finding of fact is clearly erroneous. Where the facts of a case are in dispute, it is the function of the finder of fact to adopt findings from among the various possibilities.