## STATE OF CONNECTICUT *v.* LATONE JAMES
### (SC 15932)
### (SC 15933)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and Peters, Js.

Argued September 29, 1998—officially released February 16, 1999

*Louis S. Avitabile* and *Karen Diebolt*, special public defenders, for the appellant (defendant).

*Judith Rossi,* senior assistant state's attorney, with whom were *Maureen Keegan,* supervisory assistant state's attorney, and, on the brief, *John Connelly,* state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. This opinion addresses two appeals. The principal issues in these appeals are whether, with respect to a judgment of conviction, there was sufficient evidence adduced at the trial from which the jury reasonably could have found the defendant guilty of robbery in the first degree, and whether the state is barred by the double jeopardy clause of the fifth amendment to the United States constitution,[1] or by the principles of collateral estoppel, from retrying the defendant for felony murder after the jury found the defendant guilty of robbery, but could not decide unanimously that he was guilty of the crime of felony murder.

The two appeals arose in the following manner. The defendant, Latone James, was charged with the crimes of felony murder in violation of General Statutes § 53a-54c,[2] robbery in the first degree in violation of General

---

[1] The fifth amendment to the United States constitution provides in relevant part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ."

[2] General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

Statutes § 53a-134 (a) (2),[3] and two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (5).[4] The information charged that the defendant was a principal in the commission of all of the crimes. The defendant pleaded not guilty to all counts of the information and elected a jury trial. The jury found the defendant guilty of robbery in the first degree, but was deadlocked as to the remaining counts. The trial court accepted the guilty verdict as to the robbery count and declared a mistrial as to the rest of the counts. Subsequently, the defendant moved for a judgment of acquittal on the robbery count pursuant to Practice Book § 42-51,[5] and on the remaining counts pursuant to Practice Book § 42-50.[6] The trial court denied the defendant's motions and rendered a judgment of conviction according to the verdict. The defendant appeals

---

[3] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[4] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

[5] Practice Book § 42-51 provides: "If the jury return a verdict of guilty, the judicial authority, upon motion of the defendant or upon its own motion, shall order the entry of a judgment of acquittal as to any offense specified in the verdict, or any lesser included offense, for which the evidence does not reasonably permit a finding of guilty beyond a reasonable doubt. If the judicial authority directs an acquittal for the offense specified in the verdict, but not for a lesser included offense, it may either:

"(1) Modify the verdict accordingly; or

"(2) Grant the defendant a new trial as to the lesser included offense."

[6] Practice Book § 42-50 provides: "Upon the declaration of a mistrial pursuant to Sections 42-43 through 42-45, at any time after the close of the state's case in chief, the judicial authority, upon motion of the defendant or upon its own motion, may order the entry of a judgment of acquittal as to any offense charged, or any lesser included offense, for which the evidence would not reasonably permit a finding of guilty beyond a reasonable doubt. The acquittal does not bar prosecution for any offense as to which the judicial authority does not direct an acquittal."

from the judgment of conviction claiming that the trial court abused its discretion in not granting: (1) the defendant's motion for judgment of acquittal, or alternatively modifying the judgment, as to the robbery in the first degree count; and (2) the defendant's motion for judgment of acquittal as to the remaining counts.

After the defendant was sentenced, the state filed a revised substitute information seeking to retry the defendant for felony murder.[7] The defendant moved to dismiss the information on the grounds of double jeopardy and collateral estoppel. The trial court denied the defendant's motion, and the defendant filed an interlocutory appeal. In his interlocutory appeal, the defendant claims that: (1) a retrial in this case would violate the double jeopardy clause of the fifth amendment to the United States constitution; (2) the state is collaterally estopped from relitigating the robbery count; and (3) given the verdict and the evidence in this case, the state is collaterally estopped from charging the defendant as an accessory to the felony murder. We affirm the judgment of conviction and the ruling of the trial court denying the motion to dismiss.

The jury reasonably could have found the following facts. At 5:15 a.m., on February 26, 1995, the defendant, armed with two loaded handguns, entered the La Cabana Club, an after-hours club located on Mill Street in Waterbury. With his guns drawn, the defendant approached the bar and demanded money from the bartender, Angel Perez. Before Perez could comply with the defendant's demand, the defendant shot him in the arm. Perez eventually put an undetermined amount of money on the bar. The defendant grabbed the money, shoved it into his pocket, and began to step back toward

[7] In the substitute information, the state charged the defendant as the principal as well as an accessory to the felony murder.

the door while shooting his guns rapidly. After the robbery, the defendant bragged to his friends about having robbed the club and having shot someone.

In addition to Perez, two patrons, Annibal Sanchez and Luis Melendez, were shot. Sanchez and Perez survived the shootings, but Melendez died from a gunshot wound to the head.

During an autopsy, a .38 caliber bullet was recovered from Melendez's body. The police also recovered several .22 caliber and .38 caliber empty shells from the crime scene. Further police investigation produced a .22 caliber handgun and a .38 caliber handgun. The defendant admitted that he had been carrying these guns after the robbery, and that he had managed to dispose of them through his friends. The state's expert was able to match the .22 caliber shells to the .22 caliber handgun, but was unable to determine conclusively that the .38 caliber shells and the bullet that killed Melendez came from the .38 caliber handgun.

At trial, the defendant testified that he had participated in the robbery with a man named Eddy Garcia. The defendant claimed that he was only the lookout, while Garcia was the man who had robbed Perez and had shot the others. Although the defendant admitted that he was armed with two .38 caliber handguns, he claimed that he could not have killed Melendez because he did not fire his weapons.

Despite the defendant's testimony, the trial court instructed the jury that it could find the defendant guilty of all counts only if it determined that he had been the principal in the commission of the felony murder, the robbery, and the two assaults, namely, that *he* in fact had shot all of the victims.[8]

---

[8] In the substitute information and the bill of particulars, the state had charged the defendant with having "caused the death of Luis Melendez, who was not a participant to the robbery, by means of shooting." On October

I

In his appeal from the judgment of conviction, the defendant claims that the trial court improperly denied his posttrial motion for judgment of acquittal as to the robbery in the first degree count, and as to the remaining counts on which a mistrial had been declared. We disagree.[9]

With respect to the robbery in the first degree count, the defendant contends that, although the evidence was sufficient for the jury to have found him guilty of robbery in the third degree, there was inadequate evidence for the jury to have found him guilty of robbery in the first degree because it could not have found that he was armed with a deadly weapon. To support his claim, the defendant argues that because the jury found him guilty of robbery but was deadlocked as to the remaining counts, the jury necessarily must have found that he was the lookout, not the robber in the bar. The defendant further argues that because the guns carried by the lookout were never found, there was no evidence demonstrating that these guns were capable of firing

1, 1996, several days before the start of the trial, the state submitted its request to charge, in which it asked the court to charge the jury as follows: " 'A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery and, in the course of and in furtherance of such crime or of flight therefrom, he, *or another participant*, if any, causes the death of a person other than one of the participants . . . .' " (Emphasis added.) Although the state maintained a principal liability theory, on October 22, 1996, the day of the closing of the evidence, the defendant objected to the inclusion of an accessorial liability instruction, claiming that because he originally had been charged in the bill of particulars only as the principal, his rights would be prejudiced if the state amended the bill of particulars to include the "or another participant" language.

[9] In addition, the defendant argues that the trial court should have granted his motion for judgment of acquittal as to the counts on which a mistrial had been declared because retrial would have constituted "successive prosecutions and cumulative punishments in violation of the prohibition against double jeopardy." The defendant also raises this issue in his interlocutory appeal. Accordingly, we address this aspect of the defendant's appeal with the claims he has raised in his interlocutory appeal.

shots. The defendant, therefore, claims that the jury could not have found that he was armed with a deadly weapon.

This argument is based entirely on the defendant's posttrial recasting of the jury's finding of facts, and his interpretation of the jury's decision-making process. The defendant's attempt to exploit the apparent inconsistency in the jury's behavior is, however, unavailing because the jury's inability to agree does not imply acquittal or any other particular finding of fact. *United States* v. *Sanford*, 429 U.S. 14, 15–16, 97 S. Ct. 20, 50 L. Ed. 2d 17 (1976); *State* v. *Aparo*, 223 Conn. 384, 388, 614 A.2d 401 (1992), cert. denied, 507 U.S. 972, 113 S. Ct. 1414, 1415, 122 L. Ed. 2d 785 (1993), habeas corpus granted on different grounds, *Aparo* v. *Superior Court*, 956 F. Sup. 118 (D. Conn. 1996), aff'd, 129 F.3d 113 (2d Cir.), cert. denied, 522 U.S. 967, 118 S. Ct. 414, 139 L. Ed. 2d 317 (1997); *State* v. *Daniels*, 207 Conn. 374, 388, 542 A.2d 306, following remand, 209 Conn. 225, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989). To determine that the defendant was not entitled to a judgment of acquittal pursuant to Practice Book §§ 42-50 and 42-51, the trial court was obligated to decide only whether there was sufficient evidence on which the jury reasonably could have concluded that the defendant was guilty beyond a reasonable doubt of the crimes charged. The fact that the jury did not reach a consistent result with respect to all of the counts was not a factor that the trial court should have considered in ruling on the defendant's motion. The trial court was not required to draw any factual inferences from the jury's indecision with regard to the mistrial on certain counts. *State* v. *Daniels*, supra, 388. Accordingly, the trial court's denial of the defendant's motions could be improper only if the evidence did not "reasonably permit a finding of guilty beyond

a reasonable doubt. . . ." Practice Book §§ 42-50 and 42-51.

With respect to the verdict, the trial court was obliged to determine only "whether the jury could reasonably have concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263 (1977); see also *Feir* v. *Hartford,* 141 Conn. 459, 463, 106 A.2d 723 (1954). In the present case, there was ample evidence from which the jury could have found that the defendant was armed with a deadly weapon while robbing the bartender. Similarly, there was evidence that reasonably could have permitted a finding of guilt beyond a reasonable doubt as to the remaining counts. See Practice Book § 42-50. We conclude, therefore, that the trial court properly denied the defendant's motions for judgment of acquittal. In addition, having found the verdict supported by the evidence, the trial court properly denied the defendant's motion for modification of the verdict.

II

In his interlocutory appeal,[10] the defendant claims that the trial court improperly denied his motion to dismiss the state's revised substitute information. Specifically, the defendant claims that the trial court improperly concluded that the state's attempt to retry him for felony murder did not expose him to double jeopardy. Alternatively, the defendant claims that the trial court improperly concluded that the state was not collaterally estopped from relitigating the robbery count. As a variation of the latter claim, the defendant

[10] In criminal cases, as an exception to the general rule, colorable claims of double jeopardy may be appealed before a final judgment has been rendered by the trial court. *State* v. *Seravalli,* 189 Conn. 201, 204–205, 445 A.2d 852, cert. dismissed, 461 U.S. 920, 103 S. Ct. 2076, 77 L. Ed. 2d 291 (1983).

argues that the trial court, at a minimum, should have barred the state from seeking to convict him as an accessory to the felony murder. We disagree with the defendant's contentions and, accordingly, we affirm the trial court's ruling.

## A

The first issue in the interlocutory appeal is whether a retrial for felony murder under the facts of this case violates the principles of double jeopardy. "The double jeopardy clause of the fifth amendment to the United States constitution provides: '[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb.' The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial." (Citations omitted.) *State* v. *Greco*, 216 Conn. 282, 289–90, 579 A.2d 84 (1990). "[T]he role of the constitutional guarantee [against double jeopardy] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense. . . . The issue, though essentially constitutional, becomes one of statutory construction." (Citation omitted; internal quotation marks omitted.) Id., 290. "Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) Id., 290–91. In the present case, there is no dispute that the robbery and the felony murder charges related to the same acts. Moreover, in general, for double jeopardy purposes, robbery and felony murder based on the robbery are the same offense. Id., 291. We have held, however, that

a defendant may be tried simultaneously for felony murder and the predicate crime of robbery, and punished cumulatively for both crimes, on the ground that the double jeopardy clause does not prohibit punishment for both felony murder and robbery because the legislature intended multiple punishments for these crimes. Id., 297.

The defendant concedes that he could be tried and punished for robbery and felony murder in the same trial. He argues, however, that after he was convicted and sentenced for robbery in the first degree, jeopardy as to the felony murder terminated because robbery is a lesser included offense of felony murder. In other words, the defendant's position is that because there has been a conviction for a lesser included offense of robbery, a retrial for felony murder would constitute a successive prosecution for the same offense. We disagree with the defendant's contentions.

The case most resembling the present case is *State v. Boyd*, 214 Conn. 132, 570 A.2d 1125 (1990) (*Boyd I*), on appeal after remand, 221 Conn. 685, 607 A.2d 376, cert. denied, 506 U.S. 923, 113 S. Ct. 344, 121 L. Ed. 2d 259 (1992) (*Boyd II*). In that case, the defendant was tried and convicted of burglary and felony murder in the same trial. *Boyd I*, supra, 133. On the appeal from the judgment of conviction, we reversed the felony murder conviction. Id., 141–42. Subsequently, the state again charged the defendant with felony murder. *Boyd II*, supra, 688. The defendant moved to dismiss the felony murder charge, claiming that because he had been convicted of and sentenced for the lesser included offense of burglary, the state's attempt to retry him for felony murder constituted a successive prosecution for the same offense. Id. We held that the retrial did not violate the principles of double jeopardy because jeopardy for

felony murder had attached in the first trial;[11] id., 692–98; and continued throughout the appellate process. Id., 690–92. Thus, it was a case of continuing prosecution, not successive prosecution.

The defendant attempts to distinguish *Boyd II* by arguing that, in that case, jeopardy continued because the defendant had waived his rights to a double jeopardy defense by appealing from the felony murder conviction.[12] We disagree with the defendant that the circumstances of the present case are outside the parameters of *Boyd II*. That case demonstrates that when there is a conviction of a lesser included offense such as burglary and a continuing jeopardy for the felony murder, the felony murder count can be retried without offending the principles of double jeopardy. Accord, *Boyd* v. *Meachum*, 77 F.3d 60, 64 (2d Cir.), cert. denied, 519 U.S. 838, 117 S. Ct. 114, 136 L. Ed. 2d 66 (1996). Therefore, the critical issue in this case is simply whether the mistrial terminated jeopardy as to the felony murder count. We conclude that it did not.

It is axiomatic that a mistrial required by the manifest necessities of the case does not terminate jeopardy. *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165 (1824); see also *Illinois* v. *Somerville*, 410 U.S. 458, 462, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973); *State* v. *Van Sant*, 198 Conn. 369, 377, 503 A.2d 557 (1986). The jury's inability to reach a unanimous verdict

---

[11] One of the central issues in *Boyd II* was whether jeopardy as to the felony murder count attached in the original trial despite the trial court's lack of personal jurisdiction over the defendant. *Boyd II*, supra, 221 Conn. 692. In the present case, the defendant concedes that jeopardy as to the felony murder charge attached in the original proceeding.

[12] The waiver concept on which the defendant has relied was addressed in *Boyd II* in the context of whether an appeal from the judgment of conviction and a reversal of that judgment continued the jeopardy with respect to the original prosecution. *Boyd II*, supra, 221 Conn. 690–92. Waiver of the right to contest double jeopardy is not the sine qua non to continuing prosecution.

on a count that may compel the trial court to declare a mistrial is indisputably such a case. *Dreyer* v. *Illinois*, 187 U.S. 71, 86, 23 S. Ct. 28, 47 L. Ed. 79 (1902); *State* v. *Buell*, 221 Conn. 407, 414–15, 605 A.2d 539, cert. denied, 506 U.S. 904, 113 S. Ct. 297, 121 L. Ed. 2d 221 (1992); *Aillon* v. *Manson*, 201 Conn. 675, 678, 519 A.2d 35 (1986). "[A] trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which [the defendant] was subjected." *Richardson* v. *United States*, 468 U.S. 317, 326, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984). "The double-jeopardy provision of the Fifth Amendment . . . does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again. . . . What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade* v. *Hunter*, 336 U.S. 684, 688–89, 69 S. Ct. 834, 93 L. Ed. 974 (1949). "The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and the jeopardy does not terminate when the jury is discharged because it is unable to agree." *Richardson* v. *United States*, supra, 326. We hold, therefore, that the defendant's retrial for felony murder does not violate the double jeopardy clause.

## B

The defendant also claims that the state, having tried the defendant for robbery and having obtained a conviction on that charge, is now collaterally estopped from relitigating the robbery issue. We disagree with the defendant.

"Collateral estoppel is given constitutional dimensions by the double jeopardy clause." *State* v. *Aparo*, supra, 223 Conn. 388. "In a criminal case, collateral estoppel is a protection included in the fifth amendment guarantee against double jeopardy." *State* v. *Hope*, 215 Conn. 570, 584, 577 A.2d 1000 (1990), cert. denied, 498 U.S. 1089, 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991). "To establish whether collateral estoppel applies, the court must determine what facts were necessarily determined in the first trial, and must then assess whether the government is attempting to relitigate those facts in the second proceeding." Id. A defendant who seeks to protect himself from being retried pursuant to the principles of collateral estoppel "carries the burden of establishing that the issue he seeks to foreclose from consideration in the second case was necessarily resolved in his favor in the prior proceeding." (Internal quotation marks omitted.) Id., 585. "Courts that have considered the issue have held *with virtual unanimity* that collateral estoppel bars the state from relitigating a question of fact that was determined in the defendant's favor by a partial verdict." (Emphasis added; internal quotation marks omitted.) *State* v. *Aparo*, supra, 391–92. Acquittal by the jury may indicate that there has been such a favorable finding. Id., 390. The ends of justice require that the state be barred from relitigating matters of which the defendant was acquitted because "[a]llowing a second jury to reconsider the very issue upon which the defendant has prevailed . . . implicates concerns about the injustice of exposing a defendant to repeated risks of conviction for the same

conduct, and to the ordeal of multiple trials, that lie at the heart of the double jeopardy clause." (Internal quotation marks omitted.) Id., 392. No such concern exists, however, when the defendant has been convicted.

What the defendant is advocating here is that in the continuing prosecution of felony murder in cases of this nature, the state should be barred from using the facts that were decided in its favor in the original trial to continue to prosecute on the remaining counts. The defendant's suggested approach transforms a mistrial into an automatic acquittal in cases of this nature, and thus runs contrary to the very idea of continuing prosecution. Such a result would be an unreasonable extension of the collateral estoppel doctrine. We conclude, therefore, that the defendant may not seek refuge from retrial under the doctrine of collateral estoppel because he was found guilty and convicted of robbery in the original trial.

C

The defendant further argues that, having convicted him of robbery, the jury found that he was the principal and implicitly decided that he was not an accessory to the felony murder. The defendant argues, therefore, that the state is collaterally estopped from charging and retrying him as an accessory to the felony murder. We are not persuaded by this argument.

To formulate this argument, the defendant again incorrectly reinterprets the evidence and the verdict in his favor. He argues that the jury could not have found that the lookout killed Melendez because there was no evidence that the lookout fired any shots. Therefore, according to the defendant, the robber could not have been found to be an accessory to the felony murder. Because the jury found that the defendant was the robber, the defendant argues, the jury could not have found

him to be an accessory to the felony murder.[13] Essentially, the defendant argues that under the facts of this case, the same person could not be both a principal robber and an accessory to the felony murder.

The state counters by pointing to evidence indicating that the lookout could have fired the fatal shot. The state points out that the ballistics expert could not determine positively that the .38 caliber bullet that killed Melendez and the .38 caliber shells came from the .38 caliber handgun. This evidence, along with the presence of another robber armed with .38 caliber handguns, the barrage of bullets fired in the bar, and the fact that the other victims could not identify positively the defendant as the shooter, the state argues, indicate that the jury could not decide whether it was the defendant or the lookout who had shot Melendez.

Although neither the state nor the defendant has phrased the conflict as such, it is clear that the pivotal controversy between these competing points of view is simply whether there was sufficient evidence for the jury to determine that there was a shooter other than the robber in the bar. We need not resolve this issue because, for collateral estoppel to apply, it is not enough that this issue of fact might have been determined in the original trial. *United States* v. *Irvin*, 787 F.2d 1506, 1515 (11th Cir. 1986). To succeed, the defendant must demonstrate that this issue of fact necessarily was

---

[13] In his appeal from the judgment of conviction, the defendant argues that the only reasonable conclusion that can be reached, based on the verdict and the evidence, is that the jury found that he was the lookout. See part I of this opinion. In his interlocutory appeal, the defendant argues that the same factors conclusively establish that the jury found that he was the robber. See part II B of this opinion. Because of the inherent conflict between these two positions, the defendant was represented by two different attorneys in his appeals. The fact that two different *attorneys* represented him, however, does not detract from the anomaly, to say the least, that the same *client* urges diametrically opposite interpretations of the same evidence, arising out of the same trial.

decided in his favor. *State* v. *Hope*, supra, 215 Conn. 585. The record indicates that the jury was not instructed, explicitly or implicitly, to determine whether there was a second shooter. Inasmuch as this issue was not submitted to the jury, the presence of a second shooter was not decided in the original trial. Therefore, the state is not now collaterally estopped from advancing the theory that there may have been another shooter in the bar.

### D

Lastly, the defendant offers two other reasons for prohibiting the state from charging him as an accessory. First, the defendant argues, because he was found to be the principal in the robbery, the state should be barred from retrying him as an accessory to the felony murder because there is a possibility that at the retrial he may be found to be an accessory to the robbery. This result, the defendant argues, would be inconsistent with the jury's verdict in the original trial and thus should be avoided. From our vantage point, it is not possible to predict what the jury will find in the next trial. Therefore, a contradictory verdict is no more than a possibility at this time. We cannot bar the state from retrying the defendant on a mere possibility. Furthermore, there is generally no bar to inconsistent jury verdicts in a single trial. *State* v. *Rosado*, 178 Conn. 704, 709, 425 A.2d 108 (1979). A fortiori, there is no such bar in different trials.

Second, the defendant claims that because he testified at the original trial to his detriment in reliance on the bill of particulars, which charged him only as the principal in the felony murder, the state should be barred from charging him as an accessory to felony murder in the new trial. We disagree.

The defendant claims that his position is akin to that of the defendant in *State* v. *Steve*, 208 Conn. 38, 544

A.2d 1179 (1988). In that case, the state charged the defendant with robbery in the first degree and assault in the first degree. Id., 40. In the bill of particulars, the state charged the defendant as the principal offender. Id., 41. At his trial, the defendant testified that he was an accessory to the crimes and that someone else had shot and robbed the victim. Id., 42. On the basis of that testimony, the trial court also instructed the jury on accessorial liability, as requested by the state, and the jury found the defendant guilty. Id., 42–43. On appeal, the defendant argued that he had testified to his detriment in reliance on the fact that the bill of particulars charged him only as the principal. Accordingly, we held that "the defendant was prejudiced in his defense as a result of substantial variance between the allegations in the bill of particulars and the court's instructions concerning accessorial liability." Id., 45–46.

Unlike *Steve*, the defendant in the present case has the opportunity to formulate his defense in accordance with the knowledge of charges in the revised substitute information. Therefore, the defendant is not exposed to the type of prejudicial harm that formed the basis of our decision in *Steve*. Furthermore, "[u]nder Connecticut law, a defendant may be convicted as an accessory even though he was charged only as a principal as long as the evidence presented at trial is sufficient to establish accessorial conduct." (Internal quotation marks omitted.) *State* v. *Williams*, 220 Conn. 385, 388, 599 A.2d 1053 (1991); see also *State* v. *Fleming*, 198 Conn. 255, 268 n.15, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); *State* v. *Ferrara*, 176 Conn. 508, 513 n.2, 408 A.2d 265 (1979). Therefore, deciding at the pretrial phase whether the defendant should be charged as a principal, an accessory, or both is premature. *State* v. *Solek*, 242 Conn. 409, 432, 699 A.2d 931 (1997). "[A]fter the close of evidence, the trial court will [be in a better position] to

determine whether a jury instruction on accessory liability is warranted in view of the evidence presented during the trial and the state's theory of liability in the case." Id.

The judgment of conviction is affirmed; the trial court's ruling denying the motion to dismiss is affirmed and the case is remanded to that court for further proceedings according to law.

In this opinion CALLAHAN, C. J., and BORDEN, KATZ, PALMER and PETERS, Js., concurred.

BERDON, J., dissenting. I dissent for two reasons. First, the retrial of the defendant Latone James for felony murder as an accessory violates principles of fundamental fairness and his state constitutional right to due process of law. Second, although I do not decide the issue substantively, I find that the majority's double jeopardy analysis is insufficient for the reasons I set forth herein.

I

The retrial of the defendant for felony murder as an *accessory* violates principles of fundamental fairness and the defendant's state constitutional right to due process of law.[1] By permitting the retrial, the majority effectively reverses this court's decision in *State* v. *Steve*, 208 Conn. 38, 544 A.2d 1179 (1988), and adopts the view articulated by the dissent in that case (*Callahan, J.,* with whom *Covello, J.,* joined) without acknowledging that it does so.

I begin by briefly restating the facts of the present case. The state charged the defendant in an information,

[1] "In all criminal prosecutions, the accused shall have a right . . . to be informed of the nature and cause of the accusation . . . . No person shall . . . be deprived of life, liberty or property without due process of law . . . ." Conn. Const., art. I, § 8.

as made more specific by a bill of particulars,[2] with the crimes of felony murder, robbery and two counts of assault as a *principal* offender. At trial, the defendant conceded that he participated in the robbery by serving as the lookout, but testified that he never fired his pistol. Although the state sought to have the jury instructed that it could find the defendant guilty as either a principal or an accessory, the trial court, *Fasano, J.,* correctly refused to do so based on the decision of *Steve,* because the defendant testified in reliance on being charged only as a principal. The jury found the defendant guilty of robbery, but deadlocked on the remaining three counts. Thereafter, the trial court sentenced the defendant on the robbery count and declared a mistrial on the three remaining counts. The state then sought to retry the defendant for felony murder, but charged him in a revised substitute information as both a principal and an *accessory.* The trial court denied the defendant's motion to dismiss that information, and this appeal ensued.

Prior to this court's decision in *Steve,* the Appellate Court in *State* v. *Steve,* 11 Conn. App. 699, 707–708, 529 A.2d 229 (1987), pointed out the following: " 'Due process requires that a criminal defendant be given notice of the specific charge against him and an opportunity to defend against that charge.' *State* v. *Franko,* 199 Conn. 481, 491–92, 508 A.2d 22 (1986). Where a defendant is prejudiced by being charged with a substantially different crime after the commencement of trial, his due process rights are violated. See id., 492. Where a defendant is charged with an offense, he is on

---

[2] "The purpose of a bill of particulars is to inform the defendant of the charges against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise. *State* v. *Roque,* 190 Conn. 143, 154, 460 A.2d 26 (1983). A bill of particulars limits the state 'to proving that the defendant has committed the offense in substantially the manner described.' *State* v. *Ruiz,* 171 Conn. 264, 270, 368 A.2d 222 (1976)." *State* v. *Steve,* supra, 208 Conn. 44–45.

notice that he may be convicted as an accessory and a charge on accessory liability under General Statutes § 53a-8 does not ordinarily constitute a substantially different offense. See, e.g., *State* v. *Crump*, [201 Conn. 489, 495, 518 A.2d 378 (1986)]. In a case such as this, however, where the state's pleadings affirmatively indicated that the defendant was being prosecuted as the principal and the issue of accessory liability arose only after the defendant had presented his case in obvious reliance upon the fact that he was being tried as a principal, we find that the jury was instructed to consider a theory of liability of which the defendant had no fair notice and which was beyond the scope of the state's pleadings. See *State* v. *Belton*, 190 Conn. 496, 501–502, 461 A.2d 973 (1983) (where information charged that defendant 'entered a building unlawfully,' it was error of constitutional dimension for the court to instruct that he could be found guilty if they found he entered 'or remain[ed] unlawfully' in the building). The state, therefore, bears the burden of proving that the error was harmless beyond a reasonable doubt. *State* v. *Cohane*, 193 Conn. 474, 484–85, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984); *State* v. *Belton*, supra, 503–504." I agree with the Appellate Court that a defendant's state constitutional rights are violated when a court allows a jury to consider a charge of which the defendant has had no notice. *State* v. *Steve*, supra, 11 Conn. App. 706.

Although, on appeal from the Appellate Court, the majority of this court in *Steve* did not reach the constitutional issue, it made clear that principles of fundamental fairness and our rules of practice cannot allow to stand a conviction that is at variance with the offense charged by the state. *State* v. *Steve*, supra, 208 Conn. 47–48. The court consequently affirmed the reversal of the defendant's conviction. Id., 48.

The present case differs only procedurally—not in principle—from *Steve*. In *State* v. *Steve*, supra, 208 Conn. 46, the defendant's conviction was reversed because, although the information, as made more specific by a bill of particulars, charged him only as a principal, the trial court instructed the jury that it could find the defendant guilty either as a principal or as an *accessory*. Likewise, in the present case, the trial court should not be allowed to charge the defendant as an accessory in the retrial. The original information in the present case, as made more specific by a bill of particulars, charged the defendant with felony murder only as a principal. The jury was unable to decide on the defendant's guilt or innocence on that count, and a new trial has been ordered in which the revised substitute information charges the defendant as either a principal or an *accessory*.

Surely, under the principles enunciated in *Steve*, the defendant can be retried for felony murder as a principal. But the rub in the present case is that the state seeks to retry him both as a principal and as an *accessory*, even though the defendant testified in his first trial in reliance on the fact that he was charged only as a principal. The majority evades the problem that *Steve* raises by stating merely that "[u]nlike [the defendant in] *Steve*, the defendant in the present case has the opportunity to formulate his defense in accordance with the knowledge of charges in the revised substitute information." Such an opportunity, however, is merely fictive. The defendant cannot erase his testimony in the prior trial. His admission in that trial that he was an accessory to felony murder—an admission that he made in reliance on being charged with felony murder as a principal only—is carved in stone. Moreover, the defendant's testimony will be admissible at the retrial.

This is true regardless of whether the defendant testifies in the second trial. For example, the defendant

cannot testify at the second trial that he was not an accessory, because that would constitute perjury in violation of General Statutes § 53a-156.[3] Indeed, even if the defendant does not testify, his testimony at the first trial is admissible as an evidentiary admission. See *Bredow* v. *Woll*, 111 Conn. 261, 263–64, 149 A. 772 (1930) (prior judicial admissions admissible as evidential admissions in subsequent proceedings); *Hope* v. *Valente*, 86 Conn. 301, 307, 85 A. 541 (1912) (party's testimony in prior trial may be admitted in subsequent trial even if party does not testify in subsequent trial); see generally 1 C. McCormick, Evidence (4th Ed. 1992) § 159, pp. 643–44. Accordingly, I am unable to understand (and the majority is unable to explain) how the defendant could possibly modify his defense during the retrial. Therefore, I would hold that a retrial of the defendant on the charge of felony murder as an accessory violates principles of fundamental fairness and his state constitutional right to due process of law.

## II

I cannot join the majority's treatment of the defendant's double jeopardy claim because it lacks an adequate substantive analysis. First, *State* v. *Boyd*, 221 Conn. 685, 607 A.2d 376, cert. denied, 506 U.S. 923, 113 S. Ct. 344, 121 L. Ed. 2d 259 (1992),[4] upon which the majority relies, does not determine whether the principles of double jeopardy are violated in the present case. In *Boyd*, we based our decision to allow a retrial on

---

[3] General Statutes § 53a-156 (a) provides: "A person is guilty of perjury if, in any official proceeding, he intentionally, under oath, makes a false statement, swears, affirms or testifies falsely, to a material statement which he does not believe to be true."

[4] The Second Circuit Court of Appeals, in a subsequent decision affirming the denial by the United States District Court for the District of Connecticut of a petition for habeas corpus, left open the question of whether "Boyd's burglary conviction and felony murder charge constitute[d] the 'same offense' for purposes of double jeopardy." *Boyd* v. *Meachum*, 77 F.3d 60, 64 (2d Cir.), cert. denied, 519 U.S. 838, 117 S. Ct. 114, 136 L. Ed. 2d 66 (1996).

the fact that the "[two] theories, known as 'waiver' and 'continuing jeopardy,' enable the state to retry a defendant who has appealed and has had a felony murder conviction set aside, even though a conviction for the predicate offense remains intact." Id., 692. The majority's attempt to analogize *Boyd* to the present case ignores the significance of the appellant's waiver in *Boyd*, an aspect that is wholly absent from the present case, wherein retrial is predicated on a mistrial, not reversal upon an appeal.

Second, the majority claims that a mistrial on the greater offense, when the defendant is convicted on the lesser offense that is a predicate for the greater offense, does not terminate jeopardy, and therefore, a retrial on the greater offense does not violate the principles of double jeopardy. In other words, the majority claims that jeopardy does not attach when there is a mistrial on felony murder because the retrial is merely a continuing prosecution, even though an element of felony murder has already been decided by the jury in the first trial. But see *Harris* v. *Oklahoma*, 433 U.S. 682, 97 S. Ct. 2912, 53 L. Ed. 2d 1054 (1977) ("[w]hen, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one"); *Brown* v. *Ohio*, 432 U.S. 161, 168–69, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977) (immaterial whether original conviction was for greater or lesser crime when applying double jeopardy principles that bar successive prosecutions). In an attempt to bolster its conclusion, the majority in the present case cites cases that allow a retrial, subsequent to a mistrial, for a single offense that does not involve a conviction of a lesser included offense. See, e.g., *Illinois* v. *Somerville*, 410 U.S. 458, 462, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973); *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed.

165 (1824); *State* v. *Van Sant*, 198 Conn. 369, 377, 503 A.2d 557 (1986). The precedent of these cases, however, cannot reach beyond a retrial that implicates only a single charge. Furthermore, the majority's analysis overlooks the fact that a subsequent conviction of felony murder as either an accessory or a principal is a foregone conclusion in this case because of the robbery conviction. Such a situation distinctly implicates the guarantee of the double jeopardy clause, which protects defendants from subsequent prosecutions for the same offense after conviction. See generally *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (explaining guarantees of double jeopardy clause), overruled on other grounds, *Alabama* v. *Smith*, 490 U.S. 794, 802, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989).

Nevertheless, because I find the majority's analysis insufficient with respect to the issue of double jeopardy, I leave it for another day.