**Latone JAMES, Petitioner,**

v.

**Warden LAJOIE, Respondent.**

**Civil No. 3:05cv32 (JBA).**

United States District Court,
D. Connecticut.

March 3, 2008.

Latone James, Suffield, CT, Pro se.

David M. Kutzner, Michael E. O'Hare, Chief State Attorney Office, Rocky Hill, CT, for Respondent.

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

JANET BOND ARTERTON, District Judge.

Petitioner Latone James, currently confined at MacDougall Correctional Institution in Suffield, Connecticut, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction for felony murder. For the reasons set forth below, his Amended Petition for Writ of Habeas Corpus [Doc. # 35] is denied.

## I. Procedural Background

On October 28, 1996, in the Connecticut Superior Court for the Judicial District of Waterbury, a jury found the Petitioner guilty of one count of robbery in the first degree in violation of Connecticut General Statutes § 53a–134(a)(2) and the court declared a mistrial as to one count of felony murder and two counts of assault in the first degree. *State v. James,* 247 Conn. 662, 725 A.2d 316, 318 (1999). On December 13, 1996, a judge sentenced the prisoner to twenty years of imprisonment on the robbery count. (Am. Pet. Writ Habeas Corpus at 2.) James appealed the conviction to the Connecticut Appellate Court, contending that the trial court erred in (1) denying his motion for acquittal and in failing to modify the verdict as to the robbery count, and (2) denying the motion for acquittal as to the remaining counts. *James,* 725 A.2d at 319.

On February 25, 1997, the state filed a revised substitute information and bill of particulars charging James with one count of felony murder in violation of General Statutes § 53a–54c. *Id.* He filed a motion to dismiss the substitute information on double jeopardy and collateral estoppel

grounds. The judge denied the motion and Petitioner filed an interlocutory appeal of the ruling claiming that (1) a retrial would violate the Fifth Amendment's Double Jeopardy Clause, (2) collateral estoppel barred the state from relitigating the robbery count, and (3) collateral estoppel barred the state from charging him as an accessory to felony murder. *Id.* The Connecticut Supreme Court consolidated the appeal of the ruling denying the motion to dismiss and the appeal of the robbery conviction and, on February 16, 1999, affirmed the judgment of conviction and the ruling denying the motion to dismiss. *Id.* at 325.

At the second trial, the jury found James guilty of felony murder. (Am. Pet. Writ Habeas Corpus at 2.) The court sentenced him to fifty years of imprisonment. Petitioner appealed the conviction claiming the trial court (1) erred in permitting the state to amend the information after he had testified in the first trial, (2) improperly denied his motion to dismiss, and (3) failed to submit a special verdict form to the jury and to instruct the jury that it must find that he was the principal. *State v. James,* 69 Conn.App. 130, 793 A.2d 1200, 1202 (2002). On April 9, 2002, the Appellate Court affirmed the felony murder conviction and the Connecticut Supreme Court denied the petition for certification. *Id.* at 1204, *cert. denied,* 260 Conn. 936, 802 A.2d 89 (2002). In October 2001, Petitioner filed a petition for writ of habeas corpus in state court challenging his conviction on ineffective-assistance grounds. The state court denied James's petition, the Appellate Court affirmed, and the state Supreme Court denied his petition for certification. *James v. Comm'r of Corr.,* 88 Conn.App. 554, 870 A.2d 482, 482–83,, *cert. denied,* 274 Conn. 903, 876 A.2d 11 (2005).

On January 12, 2004, Petitioner filed a motion challenging his state sentence for

the felony murder conviction as violating the Double Jeopardy Clause of the Fifth Amendment. (Pet'r's Mem. Supp. Am. Pet. Writ Habeas Corpus.) On May 10, 2004, after a hearing, a Connecticut Superior Court judge denied the motion. (*Id.*) On May 3, 2005, the Appellate Court affirmed the denial of James's motion in a per curiam opinion, and the state Supreme Court denied his petition for certification. *State v. James*, 871 A.2d 421,*cert. denied*, 879 A.2d 894 (2005).

## II. Factual Background

The Connecticut Supreme Court determined that the jury reasonably could have found the following facts:

At 5:15 a.m., on February 26, 1995, [Petitioner], armed with two loaded handguns, entered the La Cabana Club, an after-hours club located on Mill Street in Waterbury. With his guns drawn, [Petitioner] approached the bar and demanded money from the bartender, Angel Perez. Before Perez could comply with [Petitioner's] demand, [Petitioner] shot him in the arm. Perez eventually put an undetermined amount of money on the bar. [Petitioner] grabbed the money, shoved it into his pocket, and began to step back toward the door while shooting his guns rapidly. After the robbery, [Petitioner] bragged to his friends about having robbed the club and having shot someone.

In addition to Perez, two patrons, Annibal Sanchez and Luis Melendez, were shot. Sanchez and Perez survived the shootings, but Melendez died from a gunshot wound to the head.

During an autopsy, a .38 caliber bullet was recovered from Melendez's body. The police also recovered several .22 caliber and .38 caliber empty shells from the crime scene. Further police investigation produced a .22 caliber handgun and a .38 caliber handgun. [Petitioner] admitted that he had been carrying these guns after the robbery, and that he had managed to dispose of them through his friends. The state's expert was able to match the .22 caliber shells to the .22 caliber handgun, but was unable to determine conclusively that the .38 caliber shells and the bullet that killed Melendez came from the .38 caliber handgun.

At trial, [Petitioner] testified that he had participated in the robbery with a man named Eddy Garcia. [Petitioner] claimed that he was only the lookout, while Garcia was the man who had robbed Perez and had shot the others. Although [Petitioner] admitted that he was armed with two .38 caliber handguns, he claimed that he could not have killed Melendez because he did not fire his weapons.

*James*, 725 A.2d at 319.

## III. Standard

■■■■ Pursuant to 28 U.S.C. § 2254(a), a federal court may entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws; a claim that a state conviction was obtained in violation of state law is not cognizable. *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller,* 289 F.3d 36, 42 (2d Cir.2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In this context, a decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). A state court "unreasonabl[y]" applies Supreme Court precedent when the court correctly identifies the governing law, but applies that law to the facts of the case in an objectively unreasonable, not merely incorrect, manner. *Rompilla v. Beard,* 545 U.S. 374, 380, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). The state court decision must be not just incorrect, but also "objectively unreasonable." *Id.*

■ When reviewing a habeas petition, the court must presume that the factual determinations of the state court are correct, which the petitioner has the burden of rebutting by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Boyette v. Lefevre,* 246 F.3d 76, 88–89 (2d Cir.2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits). Because collateral review of a conviction applies a different standard that the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition.

*Brecht v. Abrahamson,* 507 U.S. 619, 634, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

## IV. Discussion

Although Petitioner asserts that he is challenging both his robbery and felony murder convictions, his claims are addressed only to the felony murder conviction. He contends that (1) the principles of collateral estoppel and double jeopardy bar his felony murder conviction, and (2) the principle of double jeopardy bars the sentence imposed upon him following the conviction for felony murder.

### A. Double Jeopardy Clause

■■■ Petitioner contends that his retrial on the charge of felony murder violated his rights under the Double Jeopardy Clause of the Fifth Amendment, which provides that no person "shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Under this clause, once original jeopardy for an offense terminates due to an acquittal or a conviction, the defendant may neither be tried nor punished a second time for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The Supreme Court has long held that when there has been a mistrial because of a hung jury, the Double Jeopardy Clause does not bar retrial of the defendant. *Richardson v. United States,* 468 U.S. 317, 323–24, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) (quoting *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)) ("[A] failure of the jury to agree on a verdict was an instance of 'manifest necessity' which permitted a trial judge to terminate the first trial and retry the defendant, because 'the ends of public justice would otherwise be defeated.' "). In *Richardson,* the Court explained that a mistrial because of a hung jury, unlike an acquittal,

is not an "event" that terminates the original jeopardy to which the defendant was subject. *Id.* at 325–26, 104 S.Ct. 3081.

In its analysis of James's double-jeopardy claim, the Connecticut Supreme Court relied on *Perez* and *Richardson*. The court noted that the judge in Petitioner's first trial had declared a mistrial as to the felony murder charge because the jury could not reach a verdict. On these facts, the court concluded that the mistrial did not terminate the original jeopardy as to the felony murder count which had attached once the jury was sworn before the first trial; thus, the court held that the petitioner's retrial on the charge of felony murder did not violate the Double Jeopardy Clause. Because the court applied the correct legal principles and reasonably reached the conclusion that the Double Jeopardy Clause did not bar Petitioner's retrial on the felony murder charge, the Amended Petition is denied on this ground.

## B. Collateral Estoppel

 Petitioner also contends that his conviction for felony murder is barred by collateral estoppel. In *Ashe v. Swenson*, 397 U.S. 436, 445–46, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court held that the doctrine of collateral estoppel is incorporated in the Double Jeopardy Clause of the Fifth Amendment. Collateral estoppel (or issue preclusion), "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. 1189. To determine whether an issue of ultimate fact was determined by a prior judgment, a court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter." *Id.* at 444, 90 S.Ct. 1189 (quotation marks omitted). "[T]he burden [is] on the defendant to demonstrate that

the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States*, 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

According to James, the prosecution in his first trial charged him as a principal under the robbery and felony murder statutes. After he testified at trial, the prosecution moved to amend the information to charge him as an accessory under the felony murder statute, but the trial court denied the request. The jury found him guilty of first degree robbery, but could not reach a unanimous decision as to the felony murder count and the judge declared a mistrial as to that count. Petitioner argues that the trial court's denial of the request to charge as an accessory to felony murder was a decision in his favor and should have barred the prosecution from later amending the information and retrying him on the charge of felony murder as both an accessory and a principal.

In analyzing this claim, the Connecticut Supreme Court relied upon state precedent applying collateral estoppel as expressed in *Ashe*. Because this was an application of the correct legal principles, the court's decision was not contrary to federal law. The state high court also reviewed the evidence presented at the first trial and found that the issue of whether Petitioner could have been an accessory to felony murder due to the presence of another person during the robbery and murder was neither submitted to the jury nor decided at the trial. Thus, the court held that Petitioner had not met his burden of establishing the factual predicate for collateral estoppel, namely, that an "issue of ultimate fact" had been determined in his favor. *Ashe*, 397 U.S. at 443, 90 S.Ct. 1189. The court's conclusion—that collateral estoppel did not bar Petitioner's retrial as to the felony murder charge as both

an accessory and a principle—was therefore a reasonable application of relevant precedent, and so the Amended Petition is denied on this ground.

### C. Felony Murder Sentence

 Petitioner further argues that the fifty-year sentence imposed upon him following his conviction for felony murder violated the Double Jeopardy Clause because he had already been sentenced to twenty years' imprisonment for a prior robbery conviction. In addition to protecting a criminal defendant from a second prosecution for the same offense, the Double Jeopardy Clause also precludes multiple punishments for the same offense in a single proceeding. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). This latter protection is directed at the concern that the cumulative punishment not exceed that which is authorized by statute. *Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

 To determine whether convictions for multiple separately-defined offenses arising from involvement in a single event or common series of events violate the Double Jeopardy Clause, the court must consider: (1) the statutory language; (2) how the statutes compare under the test set forth in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); and (3) any express congressional intent regarding multiple punishments. *United States v. Muhammad,* 824 F.2d 214, 218 (2d Cir.1987). The *Blockburger* test asks whether one offense requires proof of a fact not required to establish the other; if answered in the negative, the two offenses are considered the same for double jeopardy purposes. 284 U.S. at 304, 52 S.Ct. 180. *Blockburger,* however, is merely a rule of statutory construction that should be applied only where legislative intent is not clear; if the

legislature has specifically authorized cumulative punishment, such punishment may be imposed in a single trial without implicating double jeopardy. *Hunter,* 459 U.S. at 368–69, 103 S.Ct. 673. Thus, when considering this aspect of the Double Jeopardy Clause, a court must focus on whether the legislature authorized cumulative punishment. *Ohio v. Johnson,* 467 U.S. 493, 499–500, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).

James raised this double jeopardy claim in a motion filed in state court to correct his allegedly illegal sentence. He argued that robbery and felony murder based on the predicate offense of robbery constitute the same offense for double-jeopardy purposes and that he should not have been punished twice for that offense. In denying the motion, a Connecticut Superior Court judge noted that the double-jeopardy argument raised by Petitioner had been addressed by the Connecticut Supreme Court on appeal and that his conviction on the felony murder charge had been upheld twice. In analyzing the double jeopardy claim in the petitioner's interlocutory appeal of the trial court's denial of his motion to dismiss the felony murder count, the Connecticut Supreme Court relied on state court precedent applying the principles set forth in *Hunter, Brown,* and *Johnson. James,* 725 A.2d at 321–22 (citing *State v. Greco,* 216 Conn. 282, 579 A.2d 84, 87–88 (1990)). The court ultimately determined that the Double Jeopardy Clause did not prohibit trying Petitioner for felony murder and the underlying crime of robbery and imposing sentences for both convictions because the state legislature had intended multiple punishments for these crimes. *Id.* at 321–23. This was a reasonable application of correct federal precedent, and the Amended Petition is therefore denied on the ground that Petitioner's sentence for felony murder violated the Double Jeopardy Clause.

## V. Conclusion

For the foregoing reasons, Petitioner has not shown that the state court findings were contrary to or were an unreasonable application of federal law as expressed by the Supreme Court. Thus, James's Amended Petition for Writ of Habeas Corpus [Doc. # 35] is denied. Because Petitioner has not shown that a constitutional right was denied, a certificate of appealability will not issue. The Clerk is directed to close this case.

IT IS SO ORDERED.